## LEWIS B. MILLER *v.* VALENTINE SPECHT.

1. An oral bargain for its purchase vests no interest in real estate before part execution, which payment of purchase-money is not.
2. Such bargain, conferring no interest that may be taken in execution, may be surrendered or transferred without committing a fraud on creditors.

ERROR to the District Court of Allegheny.

*Sept.* 12. The facts of this case are stated in the following charge of the court below, delivered by HEPBURN, President:—

" In this ejectment, Valentine Specht claims to recover from the defendant, Lewis B. Miller, the residue of a term of ten years, ending 1st April, 1851, in the premises in dispute. Both parties claim under the same title, and each claims to be the owner of the unexpired residue of the said term.

" The term was originally created by a lease from Wm. D. Tassey to Wm. Tiernan, dated 1st April, 1841, and to continue for ten years. Tiernan, on 23d September, 1846, assigned said lease to Wm. Benson, and Benson, about January, 1847, entered into a verbal contract with one Henry Shibel to transfer to him the residue of the said term, in consideration of $280, of which $100 was to be paid in cash, and the residue of $180 on 1st May, then next —the premises to remain in possession of his (Benson's) tenant, until 1st April next, but Shibel to receive the rent from 1st January, 1847.

" Shibel, according to his testimony, borrowed the $100, the amount of cash to be immediately paid, from Valentine Specht, the plaintiff in the case, and paid it to Benson ; but, shortly previous to 1st April (he says fourteen days before), he ascertained that he was not able to pay Benson the remaining $180, and repay to Specht the $100 which he had borrowed from him. That he then agreed with Specht that he should take his place in the contract with Benson, and that, as he had paid the $100 already received by Benson, he (Specht) should go on to complete the contract; and, on his paying the residue, $180, the remainder of the term should be transferred to him. This was done, according to the testimony of Specht and others ; and on 31st May, 1847, Benson assigned the lease to Valentine Specht. But in the mean time, on 1st April, when Benson's tenant went out, Henry Shibel took possession of the premises as the tenant of Specht, and paid rent to him as long as he continued to occupy the property.

" On the part of the defendant it is shown that a judgment was obtained against Henry Shibel, at the suit of Mrs. Bobenried, now the wife of Valentine Upperman, on 14th May, 1847, for $170.42. A *fi. fa.* was issued on the judgment, which came to the sheriff's hands 20th May, in the same year. On this *fi. fa.* the property in question was levied on, and on 21st June following, was sold to Val. Upperman, by the sheriff, for the sum of $50. This title Upperman subsequently assigned to Archibald Woods, and Woods on

6th January, 1848, assigned the same to the defendant, Lewis B. Miller, for the consideration of $230.

"This is an outline of the allegations upon both sides,—the facts are entirely for your consideration. On the part of the defendant it is contended that Henry Shibel was the true owner of this term, that the $100 first paid was his own money, and that the subsequent transfer of his agreement with Benson to the plaintiff (Specht) was a fraud upon his creditors, and particularly intended to defraud the plaintiff in the judgment above referred to (Val. Upperman), out of the amount of his claim.

"Are these allegations true? Was the transfer between Shibel and Specht honest or dishonest? Was it entered into with a view to hinder, delay, or defraud the creditors of Shibel? If it was, the transaction is fraudulent and void, and the defendant is entitled to your verdict." (The evidence was then referred to, and the jury again instructed that, if there was any fraud in the transaction between these parties, it vitiated the contract, and the plaintiff could not recover.)

"But it is also contended that the chattel real remaining in the possession of Shibel at the time the execution came to the sheriff's hands, was such a badge of fraud as to authorize the sheriff to seize the term and sell it as the property of Shibel, and that his vendee could take a good title.

"Certainly the interest of Shibel, if he had any in the term, could be seized and sold by the sheriff, and Shibel can make no defence to the surrender of the possession to the sheriff's vendee, and in fact he was removed from the possession of the property by the sheriff's vendee in an action of ejectment for that purpose. *But the mere fact of his holding possession as the tenant of the plaintiff, is not such badge of fraud, or evidence of ownership, as made him in law the owner of the term, or authorized the sheriff to sell more than his actual interest in the term; and more than that, the sheriff's vendee cannot recover.* What would be the constructive ownership of the tenant of a leasehold, sub-letting from another tenant? Would he be the constructive owner of the entire term of the party from whom he rented? If so, there is a large amount of property in this city held by a very precarious title. But the law is not so—and I think is so decided in Krause's Appeal, 2 Wharton, 161, and M'Kinney *v.* Reader, 7 W. 123. *If, then, Shibel had fairly and honestly parted with his interest in the term in question to Specht, before the fi. fa. came to the sheriff's hands, he had nothing in the term which the sheriff could sell, and*

*his being in possession gives no additional rights to the sheriff's vendee;* and if Shibel had no interest in the term, the defendant cannot recover in this case.

"It is also contended by defendant's counsel that the transfer of the agreement with Benson, by Shibel to Specht, without possession taken under the transfer by Specht, is a transfer of a lease for more than three years by fraud, and is void by the statute of frauds and perjuries.

" The fact is not disputed that Shibel took possession of the property on 1st April, 1847. He says he did so, as the tenant of Specht, and that he paid him rent, and that Specht had paid $100 of the purchase-money. If the facts are so, it is sufficient to take the case out of the operation of the statute; it would be such part performance of the contract as would render it a fraud to set it aside or treat it as a nullity. But the agreement between Shibel and Benson was valid, and its validity is not controverted; the agreement between Shibel and Specht was an agreement to transfer to Specht the right which he, Shibel, had in the contract with Benson. It was not, therefore, within the letter of the statute; but if it is, the agreement is valid under the facts and circumstances of the case.

" The question then for your determination is, was the transaction between Shibel and Specht fair and honest in itself? If it was, the plaintiff is entitled to your verdict; but if it was dishonest, or entered into with a view to hinder, delay, or defraud the creditors of Shibel, then it is void for the fraud, and the defendant is entitled to your verdict."

The verdict was in favour of the plaintiff, Specht. The errors assigned here were, that the court below erred :—

1. In charging the jury, that the oral assignment by Shibel to Specht, made prior to the 31st of May, 1847, of his interest in the *residue* of the term, exceeding three years, was valid, under the facts and circumstances of the case, and not within the statute of frauds and perjuries.

2. In charging the jury, as is contained in the parts of the foregoing charge printed in italics.

3. In submitting the whole case as one of *actual* fraud to the jury, and nothing more.

*Wills* and *Heidelberg*, for the plaintiff in error.—Shibel's assignment to Specht, at any time before 31st May, 1847, was void under the statute of frauds, because it was not in writing, nor was so far

partly executed as to take it out of the statute. No part of the purchase-money was paid : there was no change of possession between Shibel and Specht to take it out of the stat. Eliz. : Pugh *v.* Good, 3 W. & S. 63 ; Brawdy *v.* Brawdy, 7 Barr, 160. Specht's possession would not entitle him to specific performance against Shibel, on his refusing to convey : 3 W. & S. 62.

But supposing Shibel's assignment to Specht was valid, the possession of Shibel from 1st April to 31st May, was fraudulent as to execution-creditors of Shibel. There is no difference between chattels real and personal, as to the necessity of possession, accompanying the transfer of title, as against execution-creditors of the vendor remaining in possession. This appears (1) not less from the abundance of authority establishing their common liability to the incidents of personal property, than from the universal terms in which the law is applied to personalty, without any exception as to real chattels : 1 Steph. Com. 262 ; 2 Woodderson, 27, 292 ; 2 Kent, 342 ; 4 Ib. 94 ; 2 Term Rep. 587 ; Hamilton *v.* Russell, 1 Cranch, 316 ; Fleetwood's case, 8 Rep. 340 ; Pennsylvania *v.* Kirkpatrick, Addison, 107 ; Clow *v.* Woods, 5 S. & R. 278 ; Babb *v.* Clemson, 10 Ib. 428 ; Martin *v.* Mathiot, 14 Ib. 215 ; Streeper *v.* Eckert, 2 Wh. 306 ; Hoffner *v.* Clark, 5 Ib. 550 ; Young *v.* M'Clure, 2 W. & S. 174 ; M'Bride *v.* M'Clelland, 6 Ib. 95 ; Ludwig *v.* Highley, 5 Barr, 141 ; Linter *v.* Buntz, 7 Ib. 90. The very point was held in the District Court by President Grier, in Hanmet *v.* Laughlin, No. 183, April T. 1841, where that learned judge affirmed " that there was no difference between chattels real and chattels personal—the sale of a horse, and the sale of a leasehold." And it was so held by Justice Shaler in the same court, in Smith *v.* Hoffer, No. 298, November Term, 1843. It appears (2) from the absence of any authority to the contrary. In Coote on Mortgages, 268, the contrary is asserted, but it is not sustained by the authorities, except *dicta* in 1 Ver. 352, 374, and in 1 Atkyns, 171. Krause's Appeal, and Luckenbach *v.* Brickenstein, 5 W. & S. 145, are relied on by, but do not sustain, the court below; on the contrary, they are authorities for our position. It appears (3) from the letter and spirit of the recording act : § 3, act 18th March 1775, expressly providing that " the act shall not extend to any lease not exceeding twenty-one years, when the actual possession and occupation goeth along with the lease." And (4) from principle. It is assumed that chattels real partake of the nature and attributes of real estate. They go, however, to the administrator, and are sold on *fi. fa.* like other chattels.

*Howard,* contrà.—If Shibel's assignment was void, so was the parol sale of Benson to Shibel, under which Miller claims. Shibel took no possession under that. And part payment of purchase-money is not sufficient: Allen's Est. 1 W. & S. 386. No proof that Benson's tenant paid rent to Shibel, or attorned to him : 7 Barr, 160. " Creditors speaking through the plaintiff," have no greater rights than the party through whom they claim: 5 Barr, 141. When Shibel gave up his bargain to Specht, 1 Maule, he had no right or title that could be enforced at law. The consideration, for which he gave up Specht's assumption to pay the balance, was good : Dubbs *v.* Finley, 2 Barr, 397. Whatever Shibel's constructive possession was, became Specht's by their bargain. The contract between Shibel and Benson could not have been enforced against Benson, or set up against his creditors. Nor could Shibel's creditors have enforced it against Benson, which alone should defeat Miller. Shibel never took possession under Benson.

The question of constructive fraud, arising on the fact of possession, cannot be raised in this case. All that was required to take the case out of the statute, was proved.

A leasehold is not subject to the incidents of personal property. Ludwig *v.* Highley decides, that the doctrine of constructive frauds is not applicable to *corporeal hereditaments,* to which class belong leaseholds: 2 Black. Com. 17; and Luckenbach *v.* Brickenstein, that it is not fraudulent *per se,* to leave the mortgagor of a leasehold in possession.

Chattels real are regarded in law as being in many respects essentially different from chattels personal. Ejectment may be maintained for them: 2 Esp. N. P. 12. Lessee for years, with resulting interest, may distrain for rent: Ege *v.* Ege, 6 Watts, 134. Vendor of leasehold has lien for purchase-money: 3 Russ. 492 ; 1 B. & Ad. 498 ; 5 Russ. 29 ; 3 Y. & Colyers, 349 ; 6 Jurist, 299 ; 1 Gale, 1; Davidson, 493 ; 1 Bos. & Pul. 21 ; 5 Taunt. 212 ; 2 Bl. 158. Krause's Appeal draws a broad distinction between the two classes of chattels.

No right vests in one, through whom property passes without his having paid for it; in contemplation of law, it never was his: 4 Mass. 556; 14 Ib. 351; 15 Johns. 458. One may legally abandon a parol contract for sale of land: Ong *v.* Campbell, 6 W. 396 ; and where one has bought on faith of parol surrender, he will be protected: Boyce *v.* M'Cullough, 3 W. & S. 434. The *bona fides* of Shibel's surrender of his contract to Specht, was for the jury.

This contract was not within the statute of frauds: 5 Hammond, 385. Shibel had nothing to transfer but Benson's promise.

The opinion of this court was delivered by

GIBSON, C. J.—It was properly said in Ludwig *v.* Highley, 5 Barr, 141, that the species of legal fraud which arises by construction of the statute of 13 Eliz. from retention of possession after a sale or pledge, is predicable of the possession, not of land, but of chattels personal. But no question of fraud seems to have arisen out of the facts of the case assumed by the judge, as the subject of his charge. As we do not sit here to revise causes on their merits, resting on the truth of the evidence, we must take the case assumed by him as we find it, and it is this: Benson owning the unexpired term of a lease, orally agreed to assign it, at a day specified, to Shibel; Benson's tenant retaining the possession in the mean time, though the rent accruing after the day of the bargain was to follow the assignment. Shibel, who had in the interval paid part of the purchase-money, transferred his bargain to Specht, who, to relieve Shibel from the consequences of inability to pay the residue of it, took his place as his substitute. The assignment to Specht was made, not at the appointed day, but at the expiration of two months afterwards, when the rest of the purchase-money was paid by him; but, at the day first appointed for it, Shibel went into possession as Specht's tenant.

Now it is clear that, if Shibel had not acquired an equitable estate in the premises, he was not bound to acquire it for the benefit of his creditors; and, if he had no interest that they could take in execution, he might surrender his bargain, or transfer it without committing a fraud on them: it was an oral one, which vests no interest in real estate before part execution. But payment of purchase-money is not part execution; and the case, consequently, stands as if that circumstance formed no part of it. Had the original contract remained in force till Shibel received the actual possession, he would have entered under it, and gained an equitable ownership proportionate to the amount of the purchase-money paid; but it was rescinded, being superseded by a new one, and the purchase-money was in effect returned, being credited to Specht, from whom Shibel had borrowed it under the new arrangement between them, which was ratified by Benson. The arrangement thus assented to was the basis of another and a different contract; and Shibel's possession under it, as the tenant of Specht, was Specht's possession. As Shibel, then, had not at any time an interest in the

lease which his creditors could touch, they had no right to insist that he should procure one. That they are not purchasers, and that they have no available interest in their debtor's purchase before it has vested an estate in him, was shown in Watson *v.* Willard, 9 Barr, 95. This result disposes of every point in the cause. For want of part execution by delivery of possession, the statute of frauds prevented the ownership of the lease from passing to Shibel; and whether it prevented it from passing from Shibel as a vendor to Specht, or whether their agreement was fraudulent, by the 13 Eliz., is immaterial, for Shibel had no ownership to vend. He did not pretend to sell his bargain, for he got nothing for it. He stepped out of it, and Specht stepped into it; and, when the arrangement was ratified by Benson, the contract was thenceforth between Benson and Specht; and it was that contract which was executed by delivery of the possession to Shibel, as Specht's tenant and agent to receive it. By Benson's assignment to Specht, the legal ownership was transferred; and, according to the principle of Kramer *v.* Arthurs, 7 Barr, 171, the beneficial ownership followed it. As there was nothing in Shibel, therefore, Upperman, under whom the defendant claims, took nothing by his purchase at sheriff's sale under his wife's judgment.

Judgment affirmed.