Zahorsky *v.* Leschinsky, Appellant.

Argued November 18, 1958. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN and BOK, JJ.

*Carl Carey,* with him *Bialkowski, Bialkowski & Bialkowski,* for appellants.

*Morey M. Myers,* with him *Carlon M. O'Malley,* for appellee.

OPINION PER CURIAM, January 5, 1959:

John Zahorsky, decedent, in 1929 became separated from Vera Zahorsky, his wife, and remained separated until decedent's death on November 9, 1951. Decedent died intestate, leaving to survive him his widow Vera Zahorsky, two daughters,—Elizabeth Zahorsky[1] and Irene Zahorsky Rodrigues,—and a son—George Zahorsky. Elizabeth Zahorsky, appellee, is decedent's personal representative.

While separated decedent formed an attachment for one Anna Leschinsky, a widow with three children. In 1938 Anna Leschinsky rented a property known as No. 115 Foley Street, Old Forge, Lackawanna County, and decedent moved into the property and became a member of the Leschinsky household. While decedent paid no stipulated amount either for board or rent he did contribute sums to Anna Leschinsky for the household support. In 1945 Anna Leschinsky discussed the purchase of this property with decedent, she having in her possession a sum of money consisting of savings from

---

[1] Now by marriage Elizabeth Zahorsky Hart.

contributions made to her by decedent and money contributed by her daughter. Up until November 1946 the latter made regular contributions to her mother.

In October 1945 decedent decided to purchase the Foley Street property. To that end he consulted an attorney whom he instructed that he did not want his wife to have any interest in the property. It was decided to take title in the names of Walter and Anna Lynchensky, decedent's brother-in-law and sister, who would then execute a mortgage for the balance of the purchase price and thereafter convey the premises to Dorothy Leschinsky. In discussing the ultimate grantee of this property decedent rejected the idea of designating any of his children because of their mother's influence upon them, stating he was satisfied with Dorothy Leschinsky as the grantee "because he knew that if at any time in the future I should ask Dorothy to deed the property to me she will do so." Neither Anna Leschinsky nor Dorothy Leschinsky took any part in the negotiations leading up to or at the time of the conveyance.

On October 15, 1945 title to the property was transferred to Lynchenskys from the Russian Orthodox Catholic Mutual Aid Society. The Lynchenskys then executed a mortgage on the premises in favor of the Old Forge Bank. The following day Lynchenskys conveyed title to Dorothy Leschinsky subject to the mortgage who has been the title holder ever since that date. Of the purchase price of $4200, decedent paid $100 as earnest money and $2100 by a cashier's check purchased from the Old Forge Bank; the balance of $2000 was financed by the mortgage. To provide the $2100 decedent withdrew $807.53 from his personal savings account and obtained $1300 from Anna Leschinsky which the court below found "came from a fund which Anna Leschinsky had been saving for the joint benefit of

John Zahorsky and herself, which at the time of the property purchase was over \$1500. The fund was made up in large part from the periodic contributions made to the household by John Zahorsky." The court below found no evidence that at any time after October 16, 1945 Dorothy Leschinsky, wife-appellant, acknowledged any beneficial interest in the property other than her own. Subsequent to the purchase date decedent continued to live in the property and to make contributions to the household expenses. Another tenant of part of the property continued his tenancy and to pay rent to Anna Leschinsky. All taxes, utility service charges, repair and maintenance bills were billed to Dorothy Leschinsky, but paid by Anna Leschinsky from funds in her possession, including contributions by Dorothy Leschinsky and by decedent and rents received. Decedent personally paid three of the mortgage installments and Anna Leschinsky the rest. The mortgage was paid in full prior to decedent's death.

Subsequent to decedent's death Elizabeth Zahorsky, as decedent's personal representative, instituted an equity action against Dorothy Leschinsky[2] and her husband asking the court to declare that title to the property was held by the said Dorothy Leschinsky as trustee for decedent or his heirs-at-law, that an accounting be made and that the legal title be conveyed for the use of decedent's estate. The court below found that as of October 16, 1945 a resulting trust in a one-half undivided interest in the property arose in decedent's favor and directed (1) that the appellants execute and deliver to decedent's personal representative a deed for such undivided one-half interest in the property for the use of the decedent's heirs-at-law, (2) that appellants account for all rents derived from the property since decedent's death and (3) that appellants pay one-

[2] Now by marriage Dorothy Leschinsky Vieira.

half the balance thereof to decedent's administratrix. From this decree the present appeal was taken.

The decree of the court below is affirmed on the following excerpts from the opinion of President Judge T. LINUS HOBAN:

"The testimony . . . seems . . . to meet the familiar rule that a resulting trust can be established only by clear, explicit and unequivocal evidence.

"The complaint in this case pleads an express trust established prior to the transfer of the property by an agreement between John Zahorsky, Anna Leschinsky and Dorothy Leschinsky. The evidence did not support such pleading, a fact which was inferentially conceded by counsel for plaintiff by brief and at the oral argument. The plaintiff rests her case entirely upon the theory that the circumstances of the purchase gave rise to a resulting trust in favor of John Zahorsky. It is obvious that an express trust could not be proved for there is no evidence in the record of such an alleged agreement, and even if there were, the title documents contain no words establishing a trust and the transfer to Dorothy Leschinsky was absolute in form. Furthermore, any effort to establish under the circumstances an express trust would be met by the bar of parol evidence rule, Restatement, Trusts, §38, and the bar of the Pennsylvania Statute of Frauds. Act of April 22, 1856, P. L. 532, §4, 33 P.S. §2.

"The general rule with reference to the establishment of resulting trusts under similar situations is expressed in §440, Restatement, Trusts: 'Where a transfer of property is made to one person and the purchase price is paid by another, a resulting trust arises in favor of the person by whom the purchase price is paid', unless the person by whom the purchase price is paid manifests an intention that no resulting trust should arise. See Restatement, Trusts, §441.

"We are satisfied from the evidence and it is the logical conclusion from the findings of fact that John Zahorsky paid at least a substantial part of the purchase price of the property in dispute and that he manifested at the time of the purchase a clear intention to reserve future disposition of the property to conform to his own desires. In other words, we think the evidence clearly establishes a resulting trust so far as John Zahorsky's interest in the property is concerned running in his own favor, and that he did not at any time manifest an intention that no resulting trust should arise. . . .

"While we are satisfied that the circumstances establish a resulting trust in favor of John Zahorsky and through the operation of the intestate laws the trust passes to his heirs at law, a serious difficulty is presented in determining the extent of Zahorsky's interest. It is clear that a substantial part of the down payment made at the time of purchase came from a fund which was derived from a number of sources,—contributions to the household made by John Zahorsky, contributions made by Dorothy Leschinsky while she was employed at Raritan Arsenal and subsequently as a member of the United States Navy, and from rentals received, and that the practical management of the property, payment of household bills, taxes, insurance, etc., were all accomplished by Anna Leschinsky. It is understandable that under the peculiar circumstances of the relationship between John Zahorsky and Anna Leschinsky and Anna Leschinsky's children that an exact accounting or division of the sources of the down payment money and the subsequent mortgage payment moneys could not be made. It seems fair and reasonable to assume that John Zahorsky's contributions would equal at least one-half of the total paid upon the property. and that the contributions made by Dorothy Leschinsky

and other income received by her mother would fairly amount to the other half.

"If the resulting trust is to be established at all, we think it just and equitable to declare that the trust arises in favor of John Zahorsky in proportion as the part paid by him bears to the total purchase price, to wit, one-half.

"When it appeared that the plaintiff must establish her case on the theory of a resulting trust, the defense pleaded the bar of the statute of limitations, which provides, 'No right of entry shall accrue or action be maintained . . . to enforce any implied or resulting trust as to realty but within five years after such . . . trust accrued, with the right of entry.' Act of April 22, 1856, P. L. 532, §6, 12 P.S. §83.

"The trust arose on October 16, 1945, upon the conveyance of title to Dorothy Leschinsky. This action was commenced by complaint filed May 7, 1953.

"It has been held that possession of the premises by the beneficiary of a resulting trust in real estate tolls the operation of the statute for so long as such possession continues. In a case in which the circumstances were even less conducive to the establishment of a resulting trust than this case, the Supreme Court declared that the Act does not apply to joint ownership until one co-owner asserted exclusive ownership. In our case Dorothy Leschinsky never asserted anything. See Rayman v. Morris, 361 Pa. 583. We think that case is decisive of the point here involved and we must consider that the statute was tolled during Zahorsky's life.

"The defense of laches is also raised but we do not think that a delay of approximately eighteen months after the death of the decedent before commencing suit sufficient to charge the plaintiff with laches, particularly in view of the fact that she was acting in a representative capacity, as well as for her own interest.

"Under all the circumstances, we are of the opinion that as of October 16, 1945, a resulting trust to the extent of one-half interest in the property arose in favor of John Zahorsky and upon his death passed to his heirs at law."

Decree affirmed.