403 A.2d 994

**Edward B. LEWIS and Mary E. Lewis, Appellants,**

**v.**

**Carl H. SPITLER and Lee Smith.**

Superior Court of Pennsylvania.

Argued March 19, 1979.

Decided May 18, 1979.

Reargument Denied July 20, 1979.

Petition for Allowance of Appeal Denied Sept. 5, 1979.

202

W. Scott Staruch, Harrisburg, for appellants.

Howard B. Krug, Harrisburg, for appellees.

Before CERCONE, President Judge, and WATKINS and HOFFMAN, JJ.

HOFFMAN, Judge:

This is an action for the declaration of a purchase-money resulting trust in favor of plaintiffs (hereinafter Lewis) against the defendant record owner of the land in question (hereinafter Spitler), based upon Lewis' transfer of $3,000 to Spitler in connection with the purchase of the land (hereinafter the Neidich tract or simply the tract). The court below denied the requested relief but awarded plaintiffs the return of their money plus interest. Only Lewis has appealed. We will reverse and remand for the entry of an appropriate order.

The land in question is a 51 acre wooded, mountainous tract in Lebanon County previously owned by Carl H. Neidich, Spitler's uncle. The administrators of the Neidich estate were his widow (Spitler's aunt) and sister (Spitler's mother). Appalachian Drive, a road which runs east and west, divides the tract. The terrain of the parcel to the north of the road, about 41 acres, is very steep and mountainous. The parcel to the south of the road, about ten acres, is comparatively flat with a man-made pond in the southernmost part of the tract. From the north side of the pond to the southern border of the tract is approximately four acres.

Lee Smith, another named defendant, is a builder who has done some work for Lewis in the past. Spitler is a stone mason whom Smith has previously employed. Lewis is a dentist who has treated Smith. During one office visit, Lewis told Smith of his desire to find a piece of land upon which he could build a vacation home. Smith told him the Neidich tract was up for sale. After Lewis expressed some interest, Smith brought Lewis and Spitler together because he thought that Spitler, being family to the deceased and the administrators of the estate, had the best chance to purchase the tract. Smith acted as a mediator between the parties, hoping that Lewis could acquire part of the tract so that he (Smith) would be contracted to build the residence thereon envisioned by Lewis.

Lewis testified that he, Smith, and Spitler first visited the Neidich tract in May of 1967. As they walked the grounds, they discussed how the tract might be acquired. Smith suggested that Lewis and Spitler pool their money and have Spitler bid on the property when it went on sale. Lewis expressed an interest in the part of the tract south of the road for a vacation retreat. Spitler indicated he wanted the larger, mountainous northern part for hunting and camping. Smith estimated that the southern parcel was about 15 acres and that $3,000 would be a fair contribution for it. According to Lewis, he and Spitler both agreed to this. On a second visit to the Neidich tract in late November or early December of 1967, the parties authorized Spitler to bid as high as $10,000 for the Neidich tract, and agreed that if their bid was successful, they would share in the cost of surveying the land so that Lewis could be given a deed to the southern parcel.

On January 3, 1968, Spitler called Lewis and told him he needed the $3,000 immediately to purchase the land. Lewis took a check to him the next day. In January of 1969, a year later, Spitler showed Lewis a survey of the Neidich tract which indicated that Lewis' parcel was limited to the four southernmost acres south of the pond. Lewis objected and subsequently commenced this lawsuit.

Spitler testified that at the parties' first visit to the Neidich tract in May of 1967, there was no discussion of price or who would take which part of the tract. On the second visit in the Fall of 1967, Spitler told Lewis he would draw a northern boundary line for Lewis' parcel about 100 feet north of the pond, estimating that would be four to five acres, for $3,000. Spitler testified that Lewis agreed to this.

As to the financing of the tract, Spitler testified that the administrators of the Neidich estate who were members of his family promised him that he could purchase the tract for $100 above the highest bid otherwise received. In October of 1967, he made a down payment to the estate of $1,000 using money borrowed from Smith. On January 4, 1968, he (1) borrowed $5,000 from his bank on a note co-signed by Smith; (2) deposited Lewis' $3,000 in his own account (which

previously showed a balance of $218.56); (3) wrote a check to Smith for $1,000 (representing repayment of Smith's earlier loan); and (4) wrote a check to his attorney for $6,600, noted as the balance due on the Neidich tract. Spitler did not receive the deed to the tract until October 16, 1969. The deed recited that Spitler purchased the property on October 27, 1967, for $7,600, and that the sale was approved by court on October 15, 1969.

Lee Smith's testimony corroborated Spitler in terms of the negotiations and agreements between Lewis and Spitler made while on the Neidich tract. Smith also stated that he had no legal interest in the land and had never been in possession of any part of it.[1]

## 1

■ The first issue for our consideration is whether Lewis' advance of $3,000 to Spitler was a contribution to the purchase price of the Neidich tract from the estate, or a payment upon an oral agreement of sale to purchase part of the tract from Spitler. This is crucial because while an oral agreement to purchase land, even when coupled with payment, is unenforceable under the Statute of Frauds,[2] contribution to the purchase price of real estate creates a purchase-money resulting trust, implied in law in favor of the beneficiary (also called the payor) who advanced the purchase-money.[3] While the payment of the purchase price by the beneficiary and its use by the transferee in acquiring the land makes out a *prima facie* case for a purchase-money resulting trust in favor of the payor, this can be rebutted by

1. The court below on remand should consider a motion to dismiss this action as against Smith. Heretofore, Smith and Spitler have been represented by the same counsel. *See* Code of Professional Responsibility, Canon 5; DR 5–105; EC 5–14 to 5–20.

2. 33 P.S. § 1; *Hill v. Meyers*, 43 Pa. 170 (1862); *Miller v. Specht*, 11 Pa. 449 (1849); *Wither's Appeal*, 14 S. & R. 185, 16 Am.Dec. 488 (Pa.1826); *Woods v. Lane*, 2 S. & R. 53 (Pa.1815).

3. Restatement [2d] of Trusts §§ 440, 441, 454. Because the purchase-money resulting trust is implied by law, the fact that the money is advanced under a parol agreement is not a bar to its enforcement. 33 P.S. § 2.

a showing that the payor did not intend that he receive any beneficial interest in the land. *Masgai v. Masgai*, 460 Pa. 453, 458, 333 A.2d 861, 863 (1975); *Zahorsky v. Leschinsky*, 394 Pa. 368, 372, 147 A.2d 362, 365 (1959).

█ Here it is uncontradicted that Lewis transferred $3,000 to Spitler for use in purchasing the Neidich tract. Moreover, the documentary evidence in the record indicates that Spitler actually used the $3,000 in purchasing the tract, since he did not have the financial resources to purchase the tract by himself. Thus, there was a *prima facie* case made out for a purchase-money resulting trust.

Is this *prima facie* case rebutted by a contrary intent of the payor-beneficiary, Lewis? The findings of fact by the court below indicate that Lewis contributed the money towards the purchase price precisely because he wanted to obtain a portion of the tract for himself as a vacation retreat.[4] Spitler's argument that he intended to re-sell to Lewis only after acquiring title himself misses the point; since Lewis contributed part of the purchase price of the tract, it is only *Lewis'* intent that he not receive a beneficial interest that can rebut the trust. *Masgai, supra* 460 Pa. at 458, 333 A.2d at 863; Restatement [2d] of Trusts § 441.

## 2

The next issue for our consideration is whether the failure of the parties to come to an agreement on the specific parcel of land to be conveyed to Lewis prevents the imposition of a purchase-money resulting trust. The court below held that it did and, for that reason, denied the requested relief.[5] This was error.

█ The law is that in the absence of an agreement to divide the property in some other manner, the beneficiary is

---

**4.** *See* Findings of Fact, Nos. 6, 17, 21, 24.

**5.** The court below stated: "[N]o definite agreement as to the boundaries was reached. It wasn't until the survey of Harold J. Light was made and given to the plaintiffs that there was any indication of intention on the part of the defendant Spitler as to the acreage which was his intention to convey to the plaintiffs. Ultimately, the plaintiffs rejected this survey as not being their understanding of the purchase. It is precisely this factual basis upon which we have

entitled to a trust in such proportion as his contribution bore to the total purchase price of the land. Restatement [2d] of Trusts § 454; *McHenry v. Stapleton*, 443 Pa. 186, 192, 278 A.2d 892, 895 (1971); *Zahorsky v. Leschinsky, supra*, 394 Pa. at 374, 147 A.2d at 366; *Wallace v. Duffield*, 2 S. & R. 521, 526 (Pa.1816); *Potoczny v. Dydek*, 192 Pa.Super. 550, 562, 162 A.2d 70, 76 (1960). *See* 5 Scott on Trusts (3d Ed. 1967) § 454, pp. 3376–77. Thus, the failure of the parties to agree upon the northern boundary of the parcel they intended for Lewis does not prevent the imposition of a resulting trust. Under the cited authorities, Lewis is entitled to a 3,000/7,600 fractional undivided interest in the tract (approximately 40%) as a tenant in common with Spitler.[6]

### 3

Next we must consider whether a trust may be imposed in light of the evidence, uncontradicted and found as a fact by the court below, that in October of 1967, Spitler made a $1,000 down payment on the tract to the administrators of the Neidich estate pursuant to an oral agreement of sale that Spitler would purchase the tract for a price $100 over the next highest bidder.

The vesting of equitable title in the contract vendee prior to the contribution of the purchase price from the payor to the vendee does, under Pennsylvania law, prevent the creation of a purchase-money resulting trust in the payor. *Musselman v. Myers*, 240 Pa. 5, 7, 87 A. 425, 426

concluded that there was no meeting of the minds as to what the corpus of the resulting trust was to be. We cannot declare that property is to be held in trust when the extent of the property cannot be determined with any certainty and there is no evidence as to what the parties agreed upon."

6. Spitler argues that Lewis should be estopped from asserting a 3,000/7,600 share in the tract because he never claimed more than the parcel below Appalachian Road, about 10 acres. However, a court will impose a trust upon a specific parcel of land only when the parties *agree* upon the parcel, which is not the case here. *See* Restatement [2d] of Trusts § 454, Comment j. Moreover, there is no evidence of misrepresentation here on Lewis' part, which is the gist of estoppel. *Murphy v. Burke*, 454 Pa. 391, 311 A.2d 904 (1973).

(1913).[7]  *Contra,* Bogert on Trusts and Trustees (2d Ed. rev. 1977) § 456 (must be prior delivery of deed to defeat trust).

However, we feel that this defense has been waived. When Spitler introduced evidence of his parol agreement and the $1,000 down payment, counsel for Lewis made a timely objection on the ground that these facts had not been pleaded. The court denied a motion to amend the pleadings but admitted the evidence subject to a motion to strike if the issue was not properly framed by the pleadings. While the court's findings of fact indicate that he admitted this evidence, the court did not discuss its significance, because it erroneously denied relief on the ground that the parties had no meeting of the minds concerning the parcel which Lewis was to receive.

■ "All affirmative defenses . . . shall be pleaded in a responsive pleading under the heading of 'New Matter.' A party may set forth as new matter any other other material facts which are not merely denials of the averments of the preceding pleading." Pa.R.Civ.P. 1030. "A party waives all defenses . . . which he does not present either by preliminary objection[s], answer or reply . . . ." Pa.R.Civ.P. 1032. *See Matthews v. Malloy,* 217 Pa.Super. 338, 272 A.2d 226 (1970); *Pugh v. Banker's Mutual Ins. Co.,* 206 Pa.Super. 136, 211 A.2d 135 (1965). An affirmative defense is distinguished from a denial of the facts which make up plaintiff's cause of action in that a defense will require averment of facts extrinsic to plaintiff's claim for

7. Lewis argues that Spitler cannot avail himself of the *Musselman* rule because his equitable interest vested from a parol contract of sale, citing the Statute of Frauds, 33 P.S. § 1. However, while the Statute of Frauds renders an oral agreement of sale of land unenforceable, it does not render all such agreements illegal, null and void. Where the parties to an oral agreement, do not contest its validity and the deed is delivered to the vendee, a third party may not attack his title on the grounds that the contract was parol. *Schuster v. Pa. Turnpike Commission,* 395 Pa. 441, 149 A.2d 447 (1959). Generally, persons who are not parties or privies to the parol contract cannot invoke the statute for their benefit. *Christy v. Brien,* 14 Pa. 248 (1850); *Burkhart v. Farmer's Union,* 11 Pa.Super. 280 (1899). *But see* 5 Scott on Trusts (3d Ed. 1967) § 457 (equitable interest based on parol agreement of sale should not be allowed to defeat purchase-money resulting trust).

relief. *Watson v. Green,* 231 Pa.Super. 115, 119, 331 A.2d 790, 791 (1974); *Pisiechko v. Diaddorio,* 230 Pa.Super. 295, 300, 326 A.2d 608, 610 (1974).

■ Here, plaintiff's cause of action was complete without reference to Spitler's agreement to purchase from the estate and his $1,000 down payment. Those averments tend to avoid, rather than destroy, plaintiff's cause of action. As such, those averments constituted an affirmative defense which was waived by the defendant Spitler for failure to plead it as new matter. Therefore, evidence of the agreement and payment of the $1,000 should not have been admitted at trial.

Lastly, because we hold that Lewis proved a good cause of action and that Spitler has waived his proffered defense, we must consider Lewis' claim for exclusion damages. At trial, Lewis presented competent, uncontradicted, expert evidence showing that the fair rental value of his fractional share of the land from the date of the deed until July 22, 1977, was $3,643. Therefore, in addition to a purchase-money resulting trust in a 3,000/7,600 fractional undivided share of the Neidich tract, Lewis is also entitled to damages of $3,643 plus interest at the legal rate since July 22, 1977.

Order reversed and remanded for the entry of an appropriate order not inconsistent with this opinion.