588 A.2d 549

## CHAMBERSBURG TRUST COMPANY

v.

## Paul H. EICHELBERGER, d/b/a Eichelberger Transportation Specialists and Kenneth E. Stake, d/b/a Ken Stake Auto Sales.

## Appeal of Kenneth E. STAKE, d/b/a Ken Stake Auto Sales.

Superior Court of Pennsylvania.

Argued Jan. 22, 1991.

Filed March 28, 1991.

200

James J. Kutz, Harrisburg, for appellant.

J. Bruce Walter, Harrisburg, for appellee.

Before OLSZEWSKI, BECK and TAMILIA, JJ.

TAMILIA, Judge:

This is an appeal from the August 28, 1990 judgment entered in favor of Chambersburg Trust Company (hereinafter CTC). By Order dated May 8, 1990, the court found, *inter* *alia,* CTC held a perfected security interest in the property which is the subject of this appeal and granted CTC leave to proceed with its levy on same. Appellant's motion for post-trial relief was denied June 7, 1990.

The procedural and factual history of this case is complex, but detailing it is necessary to an understanding of our resolution of the matter before us. The parties agreed

to the facts in this case by stipulation dated January 4, 1990 and a summary of the pertinent stipulated facts follows.

Paul H. Eichelberger,[1] doing business as Eichelberger Transportation Specialists, was party to a verbal arrangement with appellant, d/b/a Ken Stake Auto Sales, wherein appellant would tender a check to Eichelberger to purchase a specific motor vehicle and appellant would hold the title to the vehicle until such time it was sold. At that point, Eichelberger would reimburse appellant for the vehicle's original purchase price plus an agreed upon fee.

After purchasing, in a like manner, the eight motor vehicles which are the subject of this case, and without appellant's knowledge, Eichelberger entered into a number of Trust Receipt Security agreements with appellee, wherein he used the eight vehicles as partial collateral for notes totalling in excess of $177,000. At this point in time, appellee did not file the security agreements or otherwise attempt to perfect its security interests.

Thereafter Eichelberger defaulted on the notes held by CTC, and, because his outstanding obligations to CTC exceeded the payments received by CTC from collateral sources such as certificates of deposits and checking account funds, CTC confessed judgment on the aforementioned security agreements on September 8, 1988.[2] As a result, on September 9, 1988, the sheriff levied on the vehicles which, at this point, were in the appellant's possession due to Eichelberger's failure to comply with the terms of their verbal agreement. On March 22, 1989, CTC filed another writ of execution directing the sheriff to levy upon the subject vehicles in appellant's possession. That action was stayed pending the outcome of the September 8, 1988

1. Eichelberger, who pled guilty to theft by failure to make required disposition of funds received, 18 Pa.C.S. § 3927, plays no role in this appeal.

2. The notes contained confession of judgment and warrant of attorney provisions which empowered any Pennsylvania attorney to confess judgment in amount of the principal sum, plus any interest, costs and/or collection fees.

writ.   We note for the record there are no liens on the vehicles' titles.

On or about January 10, 1990, the parties agreed to submit this matter by way of stipulated facts and supporting briefs.   By Order dated May 8, 1990, the court found appellee held perfected security interests in the vehicles while appellant had no security interest and had failed to establish either a resulting trust or consignment agreement.

On appeal, Stake argues the court erred by failing to find a resulting trust existed between he and Eichelberger.   He also contends CTC's security agreements with Eichelberger failed to attach, pursuant to 13 Pa.C.S. § 9203(a)(3),[3] and are, therefore, unenforceable against the vehicles.   Appellant argues there was sufficient evidence of record from which the court could conclude a resulting trust arose in his favor.   This Court's sole duty is to decide whether there was sufficient evidence to sustain the trial court's finding.   *Fannin v. Cratty*, 331 Pa.Super. 326, 480 A.2d 1056 (1984).

A resulting trust arises where a person makes or causes to be made a disposition of property under circumstances which raise an inference that he does not intend the person taking or holding the property should have the beneficial interest therein, unless the inference is rebutted or the beneficial interest is otherwise effectively disposed of.

*Mooney v. Greater New Castle Development Corp.*, 510 Pa. 516, 520–21, 510 A.2d 344, 346 (1986), *cert. denied* 479 U.S. 915, 107 S.Ct. 317, 93 L.Ed.2d 290 (1986), citing *Policarpo v. Policarpo*, 410 Pa. 543, 189 A.2d 171 (1963).   The

3.   § 9203. Attachment and enforceability of security interest; proceeds, formal requisites
(a) Enforceability.—Subject to the provisions of section 4208 on the security interest of collecting bank and section 9113 on a security interest arising under the division on sales, a security interest is not enforceable against the debtor or third parties with respect to the collateral and does not attach unless:
. . . .
(3) the debtor has rights in the collateral.
*Id.,* § 9203(a)(3).

party seeking to establish the existence of a resulting trust bears a heavy burden of proof; the evidence must be clear, direct, precise and convincing. *Masgai v. Masgai,* 460 Pa. 453, 333 A.2d 861 (1975). Appellant has failed to meet this burden. We agree with the trial court that the specifics of this case are indicative of a loan agreement as opposed to a resulting trust.

A resulting trust exists when one individual (allegedly Eichelberger) holds property in trust for another individual (appellant), without holding a beneficial interest therein, and with the intent to, at some point in time, return the property to him who initially disposed of the property. Eichelberger did not possess the eight vehicles with the intent to someday return them to appellant. Appellant did not want the vehicles. Rather, as reflected in the stipulations and the trial court Opinion, appellant wanted to recoup his monetary investment plus an additional return to compensate him for Eichelberger's use of his money. The fact appellant had possession of the vehicles at the time the sheriff levied was a result of his attempt to salvage a modicum of the money loaned to Eichelberger after Eichelberger violated their verbal agreement. The financial arrangement between Eichelberger and appellant can be properly characterized as nothing other than a business loan.[4]

Appellant argues that because he provided Eichelberger with the money to purchase the vehicles, a prima facie resulting trust was created in his favor which could be rebutted only by evidence demonstrating appellant intended to create a beneficial interest in Eichelberger. Appellant relies on *Lewis v. Spitler,* 266 Pa.Super. 201, 403 A.2d 994 (1979), in support of this averment and contends the record is devoid of any such rebuttal evidence. The facts in *Lewis* can be distinguished from those in this case. A resulting trust was found in *Lewis* because the payor intended to

4. As found by the trial court, there was no consignment agreement between the parties as the vehicles were not purchased by appellant and consigned to Eichelberger for resale. Appellant merely supplied or loaned the purchase price to Eichelberger who, in turn, bought the vehicles at auction or elsewhere.

obtain a portion of the tract of land which was purchased with the payor's money. Appellant did not lend money to Eichelberger in order to obtain a beneficial interest in the automobiles. Unlike the situation in *Lewis*, no resulting trust was created. Even if a prima facie resulting trust was created, we find there is sufficient rebuttal evidence of record to establish appellant never contemplated receiving a beneficial interest in the vehicles, but intended only to receive a financial return on his investment. We agree with the trial court there was insufficient evidence of record to support the existence of a resulting trust.

Next, appellant argues CTC's security interest in the vehicles never attached and was, therefore, unenforceable against the vehicles. Specifically, appellant avers Eichelberger had no rights in the collateral when the security agreements were entered into by him and CTC, thereby preventing attachment. We disagree. An enforceable security interest[5] is created and attaches when the collateral is in possession of the secured creditor or the debtor signs a security agreement which contains a description of the collateral, value has been given and the debtor has rights in the collateral. *Kendrick v. Headwaters Production Credit Association*, 362 Pa.Super. 1, 523 A.2d 395 (1987), *alloc. denied*, 515 Pa. 614, 530 A.2d 867 (1987). *See* 13 Pa.C.S. § 9203(a)(1), (2), (3).

"Rights in the collateral" is not a precise phrase. Little if any Pennsylvania case law exists which would give this Court assistance in formulating an unambiguous, precise definition. Our review of related case law, Article Nine of the Uniform Commercial Code (UCC), Title 13 of Purdon's Consolidated Statutes and the foremost authority on commercial law, White and Summers, "Uniform Commercial Code," 3rd Ed. Hornbook Series, Practitioner's Ed., Vol. 2, § 24–6, pp. 319–327 (1988), leads us to conclude we must not mechanically espouse and perfunctorily apply the phrase

5. As stated supra, the parties stipulated appellee's security interests in the eight vehicles were not perfected at the time the security agreements were entered.

"rights in the collateral" without addressing the particular facts of the case. " '[R]ights in the collateral' language merely states a truism, namely, that the debtor normally can only convey something once he has something, and that something may be less than the full bundle of rights that one may hold in such property." *Id.* at 323. Simply put, a debtor may encumber the collateral to the degree he has rights in the collateral. In ascertaining the scope of a debtor's rights in collateral, a court must look to factors such as the debtor's control of the property and the extent to which the risks of ownership have been shifted to the debtor.

In the present case, neither appellant nor Eichelberger had title or absolute control of the vehicles. Although it is stipulated appellant had possession of the certificates of title until such time as the vehicles were sold, the certificates of title, as is the norm in similar commercial transactions, reflected only the most recent consumer owner. That is, although a dealership may own a used car which is for sale on its used car lot, the dealer's name is not reflected on the title. *See* Transfer to or from manufacturer or dealer, 75 Pa.C.S. § 1113. Title means absolute control and here no one had record title. Therefore, this Court must look further to ascertain Eichelberger's rights in the collateral.

Eichelberger assumed the risks of ownership with regard to the vehicles. He had physical possession of the cars and had absolute power to sell the vehicles or, for that matter, destroy them. Had the vehicles been stolen, the loss would have been borne by Eichelberger. Eichelberger's sole obligation to appellant was to repay purchase money owed plus an agreed upon fee for Eichelberger's use of appellant's money. Had Eichelberger chosen to sell the vehicles at one-half what he paid for them, his monetary obligation to appellant would have remained the same. Control of the subject vehicles clearly rested with Eichelberger.

■ We find that although Eichelberger had less than record or full ownership of the vehicles, he had sufficient control of or "rights in the collateral" for attachment to

occur and thereby create enforceable security interests on appellee's behalf. Perfection of the security interests occurred at the time of levy.

For most types of property, filing the agreement and taking possession are alternative methods of perfection of a security interest. Admittedly, CTC did not file the security agreements relating to the vehicles. Although a levy in and of itself is not an alternative means of perfecting a security interest, in this case, the sheriff's levy accomplished that end. A security interest in goods may be perfected by the secured party's taking possession of the collateral. *See, Kendrick, supra.* Appellee's levy on the vehicles gave him constructive possession of the vehicles, automatically perfecting his security interest.

The fact the appellant had physical possession of the vehicles at the time of levy is of no consequence. No security agreement, written or oral, giving him a legal right to the vehicles existed. For the sake of argument, even categorizing appellant as a bailee of the vehicles does not alter that finding. Even if the collateral is held by a bailee, the secured party is deemed to have possession from the time bailee is notified of the secured party's interest. A sheriff's levy is adequate notice of a secured party's interest. Appellee's perfected security interests prevail over any interest appellant may have had in the vehicles.

Based on the foregoing discussion, we affirm the trial court's findings there was insufficient evidence to establish a resulting trust between Eichelberger and appellant and Eichelberger had sufficient rights in the collateral to which CTC's security interest could attach.

Judgment affirmed.

BECK, J., concurs in the result.