J-A35031-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| JERRY DOUGLAS MOWERY AND HIS WIFE, HOLLY A. MOWERY, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellees | |
| v. | |
| C. RICHARD CAYLOR (INDIVIDUALLY) AND HIS WIFE, EVA A. CAYLOR, (INDIVIDUALLY); C. RICHARD CAYLOR (AS TRUSTEE) AND CARL R. CAYLOR (AS TRUSTEE), | |
| Appellants | No. 478 WDA 2014 |

Appeal from the Order February 24, 2014
In the Court of Common Pleas of Jefferson County
Civil Division at No(s): 650-2012

BEFORE:  BENDER, P.J.E., BOWES, and ALLEN, JJ.

MEMORANDUM BY BOWES, J.:                **FILED DECEMBER 30, 2014**

C. Richard Caylor, both individually and in his capacity as trustee, his wife Eva A. Caylor, and Carl R. Caylor, in his capacity as trustee, appeal from the equity court's determination that Jerry Douglas and Holly A. Mowery have a prescriptive easement over their property.  We affirm.[1]

---

[1] We note that Appellees filed a motion to quash because Appellants did not enter judgment on the verdict.  Appellants subsequently performed that action.  **See** Praecipe for Entry of Judgment, 4/8/14, at 1.  Appellees also ask for a remand in order to file a post-trial motion.  They contend that they did not receive a copy of Appellants' post-trial motion and never had the opportunity to file a cross post-trial motion.  They continue that they were unaware of the filing of the post-trial motion until they received a copy of
*(Footnote Continued Next Page)*

On July 9, 2012, Appellees instituted this action against Appellants. The action pertained to real estate owned by Appellants in Jefferson County and located adjacent to real estate possessed by Appellees. Appellees alleged the following. They purchased the Jefferson County real estate in 1988. Prior to that event, ingress and egress to the property in question was obtained by means of an obvious right-of-way over the real property owned by Appellants. The road was blocked by a locked gate. Appellees were given a key to utilize the gate by the seller when they bought the property. For the ensuing twenty-four years after 1988, Appellees continued to consistently access their land by means of the right-of-way. The use was open, notorious and continuous.

Appellees' use of the road was first questioned on September 21, 2011, after they had traversed the road to reach their property for purposes of logging. At that time, Appellants demanded that Appellees return the right-of-way to its original condition, but attempted to obtain a windfall by demanding that Appellees make repairs unrelated to the use of the right-of-way for the 2011 logging. When Appellees refused to make the changes, Appellants began to harass Appellees and their visitors when they used the

_(Footnote Continued)_ ——————————

the order denying it. However, this contention should have been raised at the trial court level. We do not have the power to grant such relief, as it was not raised, in the first instance, with the trial court. Pa.R.A.P. 302(a).

road. Eventually, Appellants blocked the road with a different locked gate. Appellees were thus prevented from accessing their property.

In their complaint, Appellees sought a declaration that they enjoyed either a prescriptive easement or an easement by necessity. In the alternative, Appellees averred that Appellants were equitably estopped from preventing Appellees from using the right-of-way. After a hearing held on January 16, 2014, the equity court found in favor of Appellees with respect to their claim that they acquired a prescriptive easement over Appellants' land.

The equity court's conclusion was premised upon the following proof adduced at the hearing in question. Norman R. Sunderland, a licensed land surveyor, testified that the road in question runs from Weaver Road, a public road, crosses Appellants' land and then proceeds to the boundary of Appellees' property. The right-of-way is demarcated by fence posts located along its boundaries.

The following proof also was adduced. Appellees' predecessor in title, Gwendolyn Smith, obtained an express easement to access the property now owned by Appellees. That road was never built and so remained undeveloped at the time of the hearing. Jerry D. Mowery reported the following. When he bought his property from Ms. Smith on July 25, 1988, the road that crosses Appellants' land, as well as property owned by an uninvolved third party, was the sole means of ingress and egress to the

property. At the time of the purchase, Ms. Smith gave him a key to a gate that blocked the roadway where it began.

Mr. Mowery stated that, in 1988, the roadway in question was used by both vehicles and pedestrians. Since 1988, he traveled to his land over the right-of-way about twice a month to hunt and for other recreational purposes. The road was used twice by vehicles to access Appellees' property in order to log it. Additionally, it was used by Kriebel Resource Co., LLC ("Kriebel"), in 1994 in order to drill wells on both Appellees' land and Appellants' real estate. Mr. Mowery indicated that he observed Carl Caylor (Mr. Caylor) occasionally as he drove across the road.

Mr. Mowery testified that he thought that he had been given permission to use the roadway. He also said that, when he saw Mr. Caylor, Mr. Caylor would confront him. Mr. Caylor would express displeasure with Mr. Mowery's use of the road. Mr. Mowery's testimony nevertheless was that he believed that he had the imprimatur of Appellants to utilize the road, especially since Kriebel used industrial equipment to transverse it to drill the well located on Mr. Mowery's land.

Mr. Mowery continued that Mr. Caylor first demanded that he cease using the right-of-way in 2011, twenty-three years after Mr. Mowery, his friends, and his family had started to use it to access Appellees' land. At that time, Mr. Caylor informed Mr. Mowery that he could no longer use the right-of-way, Mr. Caylor changed the locks on the gate, and Mr. Mowery lost his ability to access his real estate.

Mr. Caylor, who resided in Ohio, testified that his property was owned by a trust for the benefit of the Caylor family. The Caylors also utilized their land primarily for recreational purposes. In addition, a former family home was located on the land, and his parents resided there six months of the year. Mr. Caylor, in direct opposition to the testimony of Mr. Mowery, adamantly insisted that he never gave Mr. Mowery permission to use the road. Mr. Caylor further stated that he never observed Mr. Mowery on a road located on his property. N.T. Hearing, 1/16/14, at 80 ("I have not personally seen him on the road."). In contradiction to this testimony, Mr. Caylor later implicitly admitted that he had observed Mr. Mowery use his property to access the land in that Mr. Caylor testified that there had been "confrontations, several, between me and [Mr. Mowery]. And he always said, well, I've got other ways to get in." *Id*. at 93. This statement indicates that Mr. Caylor observed Mr. Mowery accessing Appellees' property over Appellants' land. Even though the right-of-way was the sole means by which Mr. Mowery could get to his property after 1988, Mr. Caylor insisted that there was not even an observable road that led to Appellees' land until Kriebel developed it in 1994 to place wells on Appellants' and Appellees' real estate. He speculated that Appellees accessed their land from 1988 to 1994 by using ATVs or trails or other people's property.

Mr. Caylor informed the equity court that, with the exception of a right-of-way given to Kriebel to access its wells, he never gave anyone permission to use any portion of his property, which would thus include the

right-of-way over which Appellees claimed a prescriptive easement. Mr. Caylor reported that he acted aggressively to keep anyone from using any part of his real estate in any manner. Mr. Caylor posted it with 400 no trespassing signs, placed barbed wire fence to keep recreational vehicles from using it, and blocked any path on the property with logs. *Id*. at 91-92. Mr. Caylor specifically stated at the hearing that he never authorized use of the road by Appellees. Mr. Caylor testified that Mr. Mowery "shouldn't have had a key to the gate, because we never authorized anybody to give him a key." *Id*. at 117. Mr. Caylor repeated that Mr. Mowery "shouldn't have the keys [to the gate at the beginning of the road]. We didn't authorize it." *Id*. at 117.

Based upon this evidence, the equity court found that Appellees acquired a prescriptive easement over the road described by Mr. Sunderland. This appeal followed denial of Appellants' post-trial motion. These issues are presented on appeal:

> [1.] Whether the trial court committed an error of law as the clear and positive evidence presented by the Plaintiffs below was insufficient to prove the elements necessary to establish an easement by prescription.

> [2.] Whether the trial court committed an error of law in rejecting the Plaintiffs' evidence of permissive use and determining that a prescriptive easement was created over the Defendants' property.

> [3.] Whether the trial court erred as a matter of law in finding that the Plaintiffs' evidence of permissive use ripened into an

adverse claim sufficient to establish a prescriptive easement simply by the fact that said use occurred over a period of years.

[4.] Whether the trial court erred as a matter of law in finding an easement by prescription over the Defendants' property where evidence was admitted that Plaintiffs had access to their property via a separate, recorded right-of-way.

[5.] Whether the trial court erred as a matter of law in finding an easement by prescription through the Defendants' property, which is unenclosed woodlands, in contravention of the Unenclosed Woodlands Act, 68 P.S. §411 *et seq*.

Appellants' brief at 5-6. Initially, we outline the applicable standard of review:

[W]e have stated that our standard of review of a decree in equity is particularly limited and that such a decree will not be disturbed unless it is unsupported by the evidence or demonstrably capricious. The findings of the chancellor will not be reversed unless it appears the chancellor clearly abused the court's discretion or committed an error of law. The test is not whether we would have reached the same result on the evidence presented, but whether the chancellor's conclusion can reasonably be drawn from the evidence.

*Mid Penn Bank v. Farhat*, 74 A.3d 149, 153 (Pa.Super. 2013) (citation omitted). As a matter of course, "we are bound by the chancellor's findings of fact, including findings regarding the credibility of witnesses, because the chancellor has the opportunity to hear the witnesses and observe their demeanor on the stand." *Makozy v. Makozy*, 874 A.2d 1160, 1168 (Pa.Super. 2005) (citation omitted).

We first outline the elements that are needed to establish the existence of a prescriptive easement. "It is well-settled that a prescriptive easement is created by (1) adverse, (2) open, (3) notorious, (4) continuous

- 7 -

and uninterrupted use for a period of 21 years." **Burkett v. Smyder**, 535 A.2d 671, 673 (Pa.Super. 1988). Appellants first maintain that the easement's use was not adverse since Mr. Mowery testified that he thought he was using the roadway with permission. Appellants' brief at 19. However, in this respect, the equity court relied upon the clear and unequivocal testimony of Mr. Caylor himself, who repeatedly testified that no permission was ever given to Appellees to use the road.

The equity court stated specifically that it found that **Appellants** proffered "credible evidence that they never authorized the plaintiffs to use the road and, in fact, repeatedly told them not to." Trial Court Opinion, 2/24/14, at 1. Appellants suggest that the equity court was not permitted to rely upon Mr. Caylor's testimony regarding the non-permissive nature of the use. However, under our standard of review, we do not disturb the credibility determinations of the equity court, which found Mr. Caylor believable and which did not credit Mr. Mowery's mistaken conclusion that his use was with permission offered by Appellees. As we noted in **Sutton v. Miller**, 592 A.2d 83, 89 (Pa.Super. 1991), "regardless of the subjective state of mind of the trespasser," a presumption of hostility will exist if the use is open, notorious, continuous, and uninterrupted. **See Tioga Coal v. Supermarkets Gen. Corp.,** 546 A.2d 1, 5 (Pa. 1988) ("It is inconceivable that if an adverse possessor actually takes possession of land in a manner that is open, notorious, exclusive and continuous, his action will not be

hostile to the true owner of the land[.]").  While it is unusual for the parties to offer evidence that is detrimental to their legal position, we are aware of no precedent that prohibits a court from using a party's own testimony against him or her.

Additionally, contrary to Appellants' rather confusing portrayal of Mr. Caylor's testimony, Mr. Caylor was consistent and adamant that he did not give Appellees permission to use the road.  He reported that, other than Kriebel, no entity or person had been given consent to use any part of Appellants' land to any extent and that he aggressively kept people from using the property in question.  Mr. Caylor reported that he scouted for trespassers, placed 400 no trespassing signs on his property and would build obstructions to prevent use of the land by motorized vehicles.  He insisted that he confronted anyone whom he saw on his property, including Mr. Mowery.  Mr. Caylor testified unequivocally that Mr. Mowery should not have had a key to the gate blocking the right-of-way since Mr. Mowery had never been given permission to use the road in question.  Hence, the equity court's determination that Appellees' use was hostile was amply supported by the record, and Appellants' first contention must be rejected.

Appellants next maintain that there was no clearly delineated road over their land for Appellees to use.  They rely upon aerial photographs that they introduced into evidence.  Nevertheless, the equity court credited the testimony of Mr. Mowery, who reported that he had used a marked road

since 1988 to access his land. Additionally, the equity court relied upon the testimony of Appellees' surveyor, Mr. Sunderland, who stated that the road was marked along its border by a series of fence posts. In addition, a representative of Kriebel, James V. Brant, testified for Appellees. He stated that, even though it was dirt and grass, the road was visible and that there were tire tracks to mark its location. Indeed, Appellees' evidence was that the right-of-way in question was the sole means by which they could even access their land from 1988 to 2011. Hence, we reject Appellants' position that there was not a road through their property over which Appellees could travel until 1994. The equity court's finding to the contrary is amply supported by the proof adduced at the hearing.

Appellants' third position is that the equity court erred when it found that the permissive use had ripened into adverse use due to the passage of time. However, the equity court did not render such a finding. It concluded that Appellants "**never authorized** the plaintiffs to use the road[.]" Trial Court Opinion, 2/24/14, at 1 (emphasis added). Therefore, it did not find that permissive use had evolved into adverse use, and this position lacks merit.

Appellants' next complaint is that the equity court erred in finding a prescriptive easement "where evidence was admitted that plaintiffs had access to their property via a separate, recorded right-of-way." Appellants' brief at 35. This issue pertains to Appellees' claim for an easement by

necessity. It is irrelevant, for purposes of establishing a prescriptive easement, whether the easement holder can access his property by other means. The elements of a prescriptive easement are that the use be adverse, open, notorious, continuous, and uninterrupted for a period of twenty-one years. A party claiming that he acquired a prescriptive easement does not have to establish that he needs the right-of-way to access his property. Therefore, this position is not pertinent to ruling of the equity court.

Finally, Appellants maintain that Appellees could not acquire an easement over their property, even though it contained a home and was posted, since it was unenclosed woodland. This position involves application of 68 P.S. § 411, which states: "No right-of-way shall be hereafter acquired by user, where such way passes through uninclosed woodland; but on clearing such woodland, the owner or owners thereof shall be at liberty to enclose the same, as if no such way had been used through the same before such clearing or enclosure."

Appellees counter that application of the statute was waived. At the hearing, Appellants raised the issue of whether Appellees could assert an easement over Appellants' land since it was unenclosed woodland. Appellees objected since application of 68 P.S. § 411 was "not in the pleadings." N.T. Hearing, 1/16/14, at 8. Our review of the record confirms that the issue was not raised in the pleadings. Appellees filed a complaint on July 9, 2012.

Appellants filed preliminary objections to that complaint that did raise the position that Appellees could not acquire an easement over their property since it consisted of unenclosed woodlands as their third preliminary objection. Appellees filed an amended complaint on September 4, 2012, and Appellants responded with preliminary objections that raised 68 P.S. § 411 as their second preliminary objection.

On October 22, 2012, Appellants filed a brief in support of their preliminary objections, and in that document, specifically withdrew the preliminary objection raising 68 P.S. § 411. Appellees responded with a brief in opposition to the preliminary objections. The remaining preliminary objection was denied on December 18, 2012. On February 13, 2013, Appellants filed an answer and counterclaim. There is no new matter raised in that pleading.

We conclude that the defense that no easement could be acquired over the property in question should have been raised as new matter. Pa.R.C.P. No. 1030 provides:

> (a) Except as provided by subdivision (b), all affirmative defenses including but not limited to the defenses of accord and satisfaction, arbitration and award, consent, discharge in bankruptcy, duress, estoppel, failure of consideration, fair comment, fraud, illegality, immunity from suit, impossibility of performance, justification, laches, license, payment, privilege, release, res judicata, statute of frauds, statute of limitations, truth and waiver shall be pleaded in a responsive pleading under the heading "New Matter". A party may set forth as new matter any other material facts which are not merely denials of the averments of the preceding pleading.

(b)  The affirmative defenses of assumption of the risk, comparative negligence and contributory negligence need not be pleaded.

Our case law holds that this list is not exhaustive and that any affirmative defense must be raised in new matter:

> Rescission is not among the affirmative defenses specifically enumerated in Pa.R.C.P. 1030.  However, the rule clearly indicates that its listing of affirmative defenses is not exclusive. An affirmative defense is distinguished from a denial of facts which make up the plaintiff's cause of action in that a defense will require the averment of facts extrinsic  to the plaintiff's claim for relief. **Lewis v. Spitler**, 266 Pa.Super. 201, 403 A.2d 994 (1979).  Applying this principle, we hold that rescission is an affirmative defense which must be raised by the defendant under the heading new matter in its responsive pleading. Where the defendant is silent as to this defense, he cannot avail himself of its protection.

**Falcione v. Cornell School Dist.**, 557 A.2d 425, 428 (Pa.Super. 1989).

In this case, the unenclosed woodlands defense required Appellants to prove facts extrinsic to Appellees' cause of action for a prescriptive easement, which is wholly unrelated to the character of the land.  The "facts" were that the land in question was both woodlands and unenclosed.  Hence, application of 68 P.S. § 411 was an affirmative defense and waived due to Appellants' failure to plead it as new matter.

Application to quash denied.  Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/30/2014