**UNITED STATES of America**

v.

**ONE PARCEL OF PROPERTY LOCATED AT 138 COLTON STREET, WINDSOR, CT.**

Civ. No. H–90–683(EBB).

United States District Court, D. Connecticut.

July 20, 1991.

Leslie C. Ohta, Asst. U.S. Atty., New Haven, Conn., for plaintiff.

Molly T. Whiton, Thomas W. Witherspoon, Jr., Farmington, Conn., John M. Andreini, Dubay & Andreini, Hartford, Conn., for defendant.

Jeann M. Spring, pro se.

Dennis J. Spring, pro se.

Anthony F. DiPentima, Short & DiPentima, P.C., Wethersfield, Conn.

### RULING ON MOTION FOR SUMMARY JUDGMENT

ELLEN B. BURNS, Chief Judge.

On August 22, 1990, the plaintiff, United States of America, filed a verified complaint of forfeiture pursuant to 18 U.S.C. § 1955(d) against the defendant property, located at 138 Colton Street in Windsor, Connecticut, with respect to the interests of claimants Jean M. and Dennis J. Spring. The case is now before the court pursuant to the plaintiff's motion for summary judgment.

For the reasons stated below, the motion for summary judgment is granted.

*Background*

The following facts, set forth primarily in the declaration of FBI Special Agent Daniel Mahan, are undisputed. Jean and Dennis Spring reside at 138 Colton Street in Windsor, Connecticut with their seventeen-year-old daughter and fourteen-year-old son. The couple originally acquired title to the defendant property on or about

May 31, 1974. On or about September 6, 1979, Dennis Spring quit-claimed his interest in the property to his wife, Jean.

Dennis Spring is a part owner and operator of J & D Restaurant, which is located on Windsor Avenue in Windsor, Connecticut. In late 1989, the Windsor police received numerous complaints from reliable sources regarding alleged drug trafficking and illegal gambling taking place at the J & D restaurant. On the basis of this information, the Windsor police obtained a warrant to search the claimant's restaurant on November 24, 1989. While executing the warrant, the police received seventeen incoming calls between the hours of 6:20 p.m. and 8:10 p.m. on the restaurant's pay phone from individuals apparently wanting to place wagers in an illegal numbers game. Pursuant to the warrant, the police seized $450 in United States currency, a Raven Arms .25 caliber automatic pistol loaded with a magazine containing six rounds of ammunition, telephone records, financial records, a Compumate phone directory, an appointment calendar computer, and gambling records containing names and three and four digit numbers. By warrant executed the same date, the Windsor police also searched the Spring residence, wherein they seized, *inter alia*, a black plastic container of cocaine, cut straws with white powder residue inside, strainers, spoons and knives with white powder residue, a plastic bag containing a "power hitter," [1] "strainer straws" used to sift cocaine, an eight-ball of cocaine from Dennis Spring's person, $2,979 in United States currency, and tapes from a telephone answering machine.

Dennis Spring, who was present at the search of his home, stated to officers of the Windsor police that he did not sell drugs, that he was only a drug user, and that he was running an illegal numbers game from his residence at 138 Colton Street and from the J & D restaurant. Spring was subsequently arrested and charged with posses-

sion of cocaine and possession of drug paraphernalia. The Windsor police then obtained a second warrant to search the Spring residence, pursuant to which they seized a notebook, found in plain view on a dresser in the Spring's master bedroom,[2] which contained various gambling records documenting hundreds of gambling transactions. The police also seized a supply of water-soluble paper and five audio-cassette tapes from a nightstand next to the nightstand in the master bedroom, as well as gambling records containing monetary accounts, dates, and names, as well as the number bet on and notations pertaining to illegal numbers wagers from Dennis Spring's desk. The seized records documented that Spring had accepted wagers averaging in excess of $2,000 per day, and that there were more than five individuals involved in the numbers operation.

The government has now moved for summary judgment, arguing that there is probable cause to believe that the defendant property was used on numerous occasions in violation of the federal anti-gambling statute, 18 U.S.C. § 1955, (the "statute"), thereby subjecting it to forfeiture. Claimant Jean Spring opposes the government's motion, contending that she is an innocent owner of the property, and therefore, that forfeiture is inappropriate.

*Discussion*

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Upon receiving a motion for summary judgment, the inquiry to be performed by the trial court "is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any

---

**1.** A "power hitter" is a plastic device used to store and inhale cocaine.

**2.** According to the Windsor police officers, the master bedroom contained various personal pa-

pers, personal clothing and cosmetics belonging to Jean Spring. She was not present during the police's search of the 138 Colton Street property.

genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). By its very terms, the standard for granting a motion for summary judgment "provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247–48, 106 S.Ct. at 2509–10. Although the moving party has the burden of showing that there is no genuine issue of fact, "the plaintiff is not thereby relieved of [her] own burden of producing in turn evidence that would support a jury verdict." *Id.* at 256, 106 S.Ct. at 2514. Rather, the Federal Rules require that "the non-moving party ... go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Whether the non-moving party "has succeeded in raising such an issue must be determined in the context of the peculiar procedural requirements of the forfeiture laws." *United States v. Property Located at 15 Black Ledge Drive*, 897 F.2d 97, 101 (2nd Cir.1990).

■ As indicated above, the government seeks to forfeit the defendant property pursuant 18 U.S.C. § 1955. Subsection (d) of the statute pertains to forfeiture and authorizes the seizure of "any property, including money, used in violation of provisions of this section ..." [3] In an action brought pursuant to the anti-gambling statute, the burden is on the government to establish probable cause to believe that the defendant property is subject to forfeiture, *U.S. v. On Leong Chinese Merchants Association Building*, 918 F.2d 1289, 1292 (7th Cir.1990), i.e. that the property is an "illegal gambling business" as defined in subsection (b)(1) of the statute. [4] To meet this standard, the government need only demonstrate that there are "reasonable grounds to believe that ... the property is subject to forfeiture." *United States v. Banco Cafetero Panama*, 797 F.2d 1154, 1160 (2nd Cir.1986). "These grounds must rise above the level of mere suspicion but need not amount to what has been termed 'prima facie proof.'" *Id.* Once the government demonstrates the existence of probable cause, the ultimate burden shifts to the claimant to prove by a preponderance of the evidence that the property is not subject to forfeiture. *On Leong, supra*, 918 F.2d at 1292.

■ In the case at bar, claimant Jean Spring does not dispute that the government had probable cause to seize the defendant property. *See* Memorandum of Law in Opposition to Plaintiff United States of

**3.** In its entirety, 18 U.S.C. § 1955(d) provides:

Any property, including money, used in violation of the provisions of this section may be seized and forfeited to the United States. All provisions of law relating to the seizure, summary, and judicial forfeiture procedures, and condemnation of vessels, vehicles, merchandise and baggage for violation of the customs laws; the disposition of such vessels, vehicles, merchandise, and baggage or the proceeds from such sale; the remission or mitigation of such forfeitures; and the compromise of claims and the award of compensation to informers in respect of such forfeitures shall apply to seizures and forfeitures incurred or alleged to have been incurred under the provisions of this section, insofar as applicable and not inconsistent with such provisions. Such duties as are imposed upon the collector of customs or any other person in respect to the

seizure and forfeiture of vessels, vehicles, merchandise, and baggage under the customs laws shall be performed with respect to seizures and forfeitures of property used or intended for use in violation of this section by such officers, agents, or other persons as may be designated for that purpose by the Attorney General.

**4.** 18 U.S.C. § 1955(b)(1) defines an "illegal gambling business" as:

a gambling business which—
(i) is a violation of that law of a State or political subdivision in which it is conducted;
(ii) involves five or more persons who conduct, finance, manage, supervise, direct, or own all or part of such business, and
(iii) has been or remains in substantially continuous operation for a period in excess of thirty days or has a gross revenue of $2,000 in any single day.

America's Motion for Summary Judgment, filed June 25, 1991, at 6. Rather, Spring contends that she was neither involved in nor aware of the gambling activities allegedly being conducted by her husband from their home, and was therefore an innocent owner of the property. Unlike the civil drug forfeiture statute, 21 U.S.C. § 881(a)(7),[5] which statutorily provides an affirmative defense to forfeiture for an innocent property owner, no such exception is specifically provided by the gambling forfeiture statute. *See supra*, n. 3. However, the Supreme Court has stated that such an affirmative defense is constitutionally warranted in the case of an "owner whose property subjected to forfeiture [was] taken from him without his ... consent," and the owner was "uninvolved in and unaware of the wrongful activity," and "had done all that reasonably could be expected to prevent the proscribed use of his property." *Calero–Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 689, 94 S.Ct. 2080, 2094, 40 L.Ed.2d 452 (1974). *Cf. United States v. Various Denominations of Currency*, 628 F.Supp. 4, 8 (S.D.W.Va. 1984) (Forfeiture pursuant to § 1955(d) of real property owned by or leased to third persons may be refused where the requirements for a *Calero–Toledo* exception are met).

In asserting an innocent owner defense, the burden is on the claimant to establish either that she had no knowledge of the illegal gambling activity or, if she had knowledge, that she did not consent to it. *U.S. v. Certain Real Property and Premises, Known as 418 57th Street, Brooklyn, New York*, 922 F.2d 129, 131 (2nd Cir.1990) (Construing civil drug forfeiture statute); *U.S. v. 141st Street Corp. by Hersh*, 911 F.2d 870, 878 (2nd Cir.1990) (same). Thus, if an owner can prove lack of knowledge of gambling-related activity on the property, forfeiture is instantly defeated. *Certain Real Property, supra*, 922 F.2d at 131. Even if such knowledge is demonstrated, however, an owner may still demonstrate lack of consent to the illegal activities as a defense to the seizure. *Id.* Consent is something more than a state of mind; it is the failure to take all reasonable steps to prevent illicit use of premises once one acquires knowledge of the illegal activity. *141st Street, supra*, 911 F.2d at 879.

By affidavit dated June 10, 1990, Jean Spring asserts that she has resided in the defendant property continuously for the past seventeen years, during the majority of which, her husband, Dennis Spring, lived with her. Spring, somewhat incredibly, claims that, up until the time the search of the property was conducted in November of 1989, she "did not realize that the premises were being used to conduct and/or facilitate illegal gambling," and that she "never knowingly witnessed [Dennis Spring] engaging in any violation of the state gambling laws in [her] home." Spring Affidavit at ¶¶ 6, 9. She further claims that she never participated in any illegal gambling activities in her home, and that she has never been charged with or arrested for any violation of state gambling laws. *Id.* at ¶¶ 8, 10. The court concludes that these bare assertions of ignorance, when considered in the context of the record as a whole, would not lead a rational trier of fact to find that there is a genuine issue for trial. *Matsushita Electric Industrial Co., Ltd v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

To the contrary, the preponderance of the evidence available to the court strongly suggests that illegal gambling activity was taking place right before the claimant's

**5.** 21 U.S.C. § 881 provides, in relevant part, that:
> (a) The following shall be subject to forfeiture to the United States and no property right shall exist in them:
> (7) All real property, including any right, title, and interest (including any leasehold interest) in the whole of any lot or tract of land and any appurtenances or improvements, which is used, or intended to be used, in any manner or part, to commit or facilitate the commission of, a violation of this title punishable by more than one year's imprisonment, except that no property shall be forfeited under this paragraph, to the extent of an interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of the owner.

very eyes. The notebooks, cash, and other gambling-related paraphernalia seized by the Windsor police in the defendant property were found in plain view on a dresser and nightstand in the claimant's own bedroom, a room she shared with her husband, and in other common areas of the house. Moreover, an analysis of the records contained in the seized notebooks indicates that the numbers operation being conducted out of 138 Colton Street was not periodic, but was one that, quite evidently, had been thriving for at least the previous fifteen months. In the face of such overwhelming evidence, "more detailed factual substance in support of her claim of ignorance" was required of the claimant to demonstrate the existence of genuine issues of material fact. *15 Black Ledge Drive, supra*, 897 F.2d at 102. ("It may be that under some circumstances a claimant's flat denial of knowledge, without more, could suffice to create a genuine issue of fact precluding summary judgment under Rule 56(e). But on these facts, which included the seizure of drugs, drug paraphernalia, large sums of cash and weapons from the common areas and the master bedroom, such a bare denial was insufficient to create a genuine triable issue"). Finding no material issues to be in dispute, the court concludes that the government is entitled to summary judgment as a matter of law.

*Conclusion*

For the reasons stated herein, the motion for summary judgment is granted.

SO ORDERED.