UNITED STATES of America, Plaintiff,

v.

PREMISES KNOWN AS 717 SOUTH WOODARD STREET, ALLENTOWN, PENNSYLVANIA, a Parcel of Real Property and all Improvements Thereon and all Appurtenances Thereto, Lying in the County of Lehigh and Commonwealth of Pennsylvania

and

PREMISES KNOWN as 245 and 247 North Second Street, Allentown Pennsylvania a Parcel of Real Property and all Improvements Thereon and all Appurtenances Thereto, Lying in the County of Lehigh and Commonwealth of Pennsylvania

and

Premises Known as 209–217 North Second Street, Allentown Pennsylvania a Parcel of Real Property and all Improvements Thereon and all Appurtenances Thereto, Lying in the County of Lehigh and Commonwealth of Pennsylvania

and

Any and all Proceeds from the Sale of Said Property, Defendants.

Civ. A. No. 91–4946.

United States District Court, E.D. Pennsylvania.

Oct. 5, 1992.

James H. Swain, Asst. U.S. Atty., Philadelphia, Pa., for plaintiff.

Louis T. Savino, Jr., Philadelphia, Pa., Emmanuel H. Dimitriou, Reading, Pa., Richard J. Makoul, Allentown, Pa., and Joseph J. Grassi, III, McLean, Va., for defendants.

## OPINION AND ORDER

VAN ANTWERPEN, District Judge.

This civil forfeiture action is brought by the plaintiff, United States of America, in rem under 21 U.S.C. § 881(a)(7)[1] against the following defendant real properties: premises known as 717 South Woodard ("the 717 South Woodard property"), premises known as 245 and 247 North Second Street ("the Food Market property"), premises known as 209–211 and 213–217 North Second Street ("the Liederkranz property"). Two of the Claimants, Jaime Rivera and Wyrma Acevedo Rivera, have filed verified claims to all of the defendant properties. The third Claimant, Luis Rivera, has also filed a verified claim to all of the properties, but his Answer to the Government's Complaint reveals that he is only claiming an interest to the Liederkranz property.[2] Before the court is the Govern-

---

1. The court notes jurisdiction under 28 U.S.C. §§ 1331, 1345, 1355.

2. Additional parties have filed claims to the defendant properties as innocent owners. However, these mortgage holder claims are not at

ment's Motion for Summary Judgment on the grounds that there is probable cause to believe that the defendant properties are subject to forfeiture and that the Claimants do not meet the requirements under the innocent owner defense to have their alleged interests exempted. Wyrma Acevedo Rivera contends that she in an innocent owner of all the defendant properties and Luis Rivera contends that he is an innocent owner of the Liederkranz property.

We informally granted Claimants' counsel a 14-day extension to file a response to the Government's Motion for Summary Judgment. Counsel then wrote to the court requesting an another extension which we responded to by a letter of June 3, 1992 that denied the additional extension and also warned counsel to file a timely response. When no timely response was filed, we granted the Government's Motion on June 30, 1992. On July 16, 1992, we granted Counsel's Motion for Reconsideration in the interests of justice. However, a review of the merits of this matter convinces us that we should have let our Order of June 30, 1992 stand. For the reasons stated below, the Government's Motion for Summary Judgment is granted.

## I. FACTUAL BACKGROUND

The Government's Statement of Facts is undisputed, we summarize these facts as follows. From May through July of 1991, the 717 South Woodard property, the residence of Jaime and Wyrma Rivera, was used to store cocaine on numerous occasions. On July 31, 1991, three kilograms of cocaine were stored at the 717 South Woodard property while the final negotiations to consummate a sale of the cocaine were conducted by Jaime Rivera. Jaime Rivera specifically directed a courier to go the 717 South Woodard property and wait. He then had the buyer, Manuel De La Cruz, who is an individual familiar with the drug trafficking activities of Jaime Rivera, brought to the 717 South Woodard property to show De La Cruz the three kilograms of cocaine. Additionally on July 31, 1991,

the three kilograms of cocaine were seized from the table in the kitchen/dining room by officers executing a court authorized search and seizure warrant. Drug paraphernalia, including an Ohaus triple beam scale, sandwich bags, measuring spoon, and zip lock bags were also seized inside the residence.

From May through July of 1991, 245-247 North Second Street, which houses the El Nuevo Puerto Rican Food Market, was also used on numerous occasions to store cocaine. Further, the Food Market property was the site of both person-to-person meetings and telephone calls between Jaime Rivera, De La Cruz, and DEA Special Agent Frank Marrero to arrange at least three separate sales of cocaine.

In June of 1991, Jaime Rivera used 209-211 and 213-217 North Second Street, the site of the Liederkranz property, to negotiate and consummate the sale of 125 grams of cocaine to De La Cruz. During negotiations on the Liederkranz property, Jaime Rivera bragged about his ability to handle weight quantities of cocaine and, in an effort to impress De La Cruz with the quality of his cocaine, showed him 500 grams of pure flake cocaine. Further, while taking De La Cruz on a tour of the Liederkranz property, Jaime Rivera specifically pointed out a secret area being constructed for the future storage of cocaine. Lastly, Jaime Rivera negotiated the sale of six kilograms of cocaine on the Liederkranz property with both De La Cruz and DEA Special Agent Marrero.

Jaime Rivera was subsequently arrested pursuant to a Criminal Complaint. On November 22, 1991, a jury found Jaime Rivera guilty of committing drug offenses under 21 U.S.C. §§ 841(a)(1), 846, 860, and 18 U.S.C. § 2.

The Government's Statement of the Facts also sets forth the following property interests of the Claimants. On September 27, 1979, Jaime Rivera and Wyrma Acevedo purchased the 717 South Woodard property. They are the record owners of 717 South Woodard property. Jaime Riv-

issue in the Government's Motion for Summary Judgment. The court has approved Stipulated

Expedited Settlement Agreements between the Government and these parties.

era and Wyrma Acevedo were later married on July 5, 1986. On July 16, 1986, Jaime Rivera and his wife, Wyrma Acevedo Rivera, purchased the Food Market property. They are the record owners and hold the Food Market property as tenants by the entireties. On February 7, 1991, Jaime Rivera purchased the Liederkranz property. He is the sole record owner of the *Liederkranz* property.

Aside from the undisputed facts, the Claimants have made the following additional factual assertions relevant to their innocent owner claims. Jaime Rivera and Wyrma Acevedo Rivera allege that they hold the 717 South Woodard property as tenants by the entireties. We accept this allegation as being true for purposes of this Motion.[3] From February through July of 1991, Wyrma Rivera operated and maintained a small grocery store at the Food Market Property, along with her husband. During the course of her husband's criminal conduct, Wyrma Rivera claims that she maintained the family residence at 717 South Woodard with the earnings that she received in the course of her employment.[4] Wyrma Rivera also asserts an ownership interest in the Liederkranz property by virtue of her marriage to Jaime Rivera at the time of its purchase.

Luis Rivera also claims to be an equitable owner of the Liederkranz property. He alleges that he contributed $14,500.00 to the down payment in order to purchase the Liederkranz property and, thereafter, made monthly payments of $792.00 to the mortgage holder on an alternating basis with Jaime Rivera. It is alleged that by an agreement between Jaime Rivera and Luis Rivera, title to the property was taken solely in Jaime Rivera's name. We will also assume that these allegations are true for purposes of this Motion.

Finally, both Wyrma Rivera and Luis Rivera have made a bare assertion that they neither knew, nor consented to any of the criminal acts that were committed on the subject premises.

## II. STANDARD OF REVIEW

Summary Judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[5] Fed. R.Civ.P. 56(c). The moving party bears the initial burden of identifying for the court those portions of the record that it believes demonstrate the absence of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Where the non-moving party opposing summary judgment has the burden of proof at trial on an issue for which summary judgment is sought, such a party must then make a showing sufficient to establish the existence of the essential elements of her case in order to survive a summary judgment motion. *Celotex Corp.,* 477 U.S. at 322–23, 106 S.Ct. at 2552. In making such a determination, the appropriate inquiry is

---

**3.** Jaime Rivera and Wyrma Acevedo Rivera were unmarried at the time they purchased the 717 South Woodard property and, thus, could not have initially held the property as tenants by the entireties. We will infer that the property was reconveyed to them after their marriage. *See generally Maxwell v. Saylor,* 359 Pa. 94, 96, 58 A.2d 355, 357 (1948).

**4.** Wyrma Acevedo Rivera makes this assertion in her brief supporting her reply to the Government's Motion for Summary Judgment. Although statements made in counsel's brief are not evidence for purposes of establishing a disputed issue of material fact under Federal Rule of Civil Procedure 56, *Goodway Marketing, Inc. v. Faulkner Advertising Ass'n., Inc.,* 545 F.Supp. 263, 268 n. 3 (E.D.Pa.1982), she has established that she was employed in her Answers to the

Government's Interrogatories, and in the interests of justice, we will infer for purposes of this Motion, that she used her earnings to support her family in their home.

**5.** A party's sworn pleading is the equivalent of an affidavit for purposes of a summary judgment motion. *See, e.g., Ratner v. Young,* 465 F.Supp. 386, 389 n. 5 (D.V.I.1979) (citations omitted). Therefore, in the interests of justice, the factual allegations in the Claimants' verified Answers to the Government's Complaint were considered by the court to establish a factual basis for the Claimants' innocent owner defense. Likewise, the Claimants' verified Claims are the equivalent of an affidavit and, thus, the facts in these claims were also considered in like manner.

whether there is a need for a trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). "Where the full record, taken together could not lead a rational trier of fact to find for the non-moving party, no genuine issue exists for trial." *United States v. One 107.9 Acre Parcel of Land Located in Warren Township*, 898 F.2d 396, 398 (3d Cir.1990) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986)).

In applying the standard for summary judgment, our analysis is guided by the following well established rules. All inferences must be drawn in favor of the non-moving party, *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Continental Ins. Co. v. Bodie*, 682 F.2d 436, 438 (3d Cir.1982), all doubts must be resolved against the moving party, *Gans v. Mundy*, 762 F.2d 338, 341 (3d Cir.1985) (citations omitted), *cert. denied*, 474 U.S. 1010, 106 S.Ct. 537, 88 L.Ed.2d 467 (1985), and all allegations of the non-moving party that conflict with those of the movant must be taken as true. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513. However, "the mere existence of some allegedly factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Id.* at 247–48, 106 S.Ct. at 2510. If the evidence is merely "colorable" or "not significantly probative", summary judgment may be granted. *Id.* at 249, 106 S.Ct. at 2511. A party resisting a summary judgment motion "cannot ... rely merely upon bare assertions, conclusory allegations or suspicions." *Ness v. Marshall*, 660 F.2d 517, 519 (3d Cir.1981); Fed.R.Civ.P. 56(e). A "'response must set forth *specific facts* showing that there is a genuine issue for trial.'" *Gans*, 762 F.2d at 341 (quoting Fed.R.Civ.P. 56(e)) (emphasis added).

## III. DISCUSSION

The Government is seeking an order of forfeiture against the defendant properties under the authority of 21 U.S.C. § 881(a)(7),[6] which provides for an action in rem against real property used to facilitate drug activity. To establish its right to forfeiture, the Government bears the initial burden of demonstrating that there is probable cause to believe that the properties in question were used, or intended to be used to facilitate violations of the federal controlled substances statute. *United States v. RD 1, Box 1, Thompsontown, Delaware Township*, 952 F.2d 53, 56 (3d Cir.1991) [hereinafter *Thompsontown* ] (citing 19 U.S.C. § 1615);[7] *United States v. Parcel of Real Property known as 6109 Grubb Road*, 886 F.2d 618, 621 (3d Cir.1989) [hereinafter *6109 Grubb Road* ] (citations omitted). A probable cause determination is made by examining whether the Government has relied upon information "'adequate and sufficiently reliable to warrant the belief by a reasonable person that' the propert[ies] [were] used to further the trafficking of illegal narcotics." *6109 Grubb*

---

**6.** The statute provides in relevant part:

(a) The following shall be subject to forfeiture to the United States and no property right shall exist in them:

....

(7) All real property, including any right, title, and interest (including any leasehold interest) in the whole of any lot or tract of land and any appurtenances or improvements, which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this title punishable by more than one year's imprisonment, except that no property shall be forfeited under this paragraph, to the extent of an interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.
21 U.S.C. § 881(a)(7).

**7.** 19 U.S.C. § 1615 is made applicable to a Section 881(a)(7) forfeiture proceeding via 21 U.S.C. § 881(d). *United States v. RD 1, Box 1, Thompsontown, Delaware Township*, 952 F.2d 53, 56 (3d Cir.1991). Section 1615 governs burdens of proof in a forfeiture proceeding and provides in relevant part:

In all suits or actions ... brought for ... forfeiture ... where the property is claimed by any person, the burden of proof shall lie upon such claimant ...: *Provided,* That probable cause shall be first shown for the institution of such suit or action....
19 U.S.C. § 1615.

*Road,* 886 F.2d at 621 (quoting *United States v. One 56–Foot Motor Yacht Named Tahuna,* 702 F.2d 1276, 1282 (9th Cir.1983)). The Government must demonstrate that the properties *facilitated* illegal drug trafficking to establish the requisite nexus between the subject premises and the underlying crimes. *Thompsontown,* 952 F.2d at 56–57 (citation omitted).

Once the Government demonstrates the existence of probable cause, the ultimate burden shifts to the Claimants to prove by a preponderance of the evidence either that the properties were *not* used to facilitate the trafficking of illegal narcotics, or that the illegal use was without the Claimants' knowledge or consent. *Id.* at 56; *6109 Grubb Road,* 886 F.2d at 623 (citations omitted); *see also* 19 U.S.C. § 1615. These respective burdens apply both to trial and to summary judgment proceedings, because a summary judgment motion implicates the same evidentiary burden of proof that would apply at trial. *See Anderson,* 477 U.S. at 252–54, 106 S.Ct. 2512–513; *United States v. Premises and Real Property at 4492 S. Livonia Rd.,* 889 F.2d 1258, 1267 (2d Cir.1989). Accordingly, whether the Claimants, the non-moving parties in this case, have succeeded in raising a genuine issue of material fact must be evaluated in the context of the procedural requirements of the forfeiture laws.

The Claimants do not dispute that by using the properties to store drugs and to both negotiate and consummate the sale of drugs, each of the properties was used to facilitate illegal drug trafficking in violation of the federal controlled substances statute. Therefore, whether the Government has made a sufficient showing of probable cause is not at issue. Rather, the Claimants, Wyrma Acevedo Rivera and Luis Rivera, contend that summary judgment cannot be granted because they claim that their property interests are within the statutorily created exemption for innocent ownership. The Claimant, Jaime Rivera, was found guilty of violating the federal controlled substances statute and, therefore, does not contend that his interests in the properties are exempted under the innocent owner exception. If a claimant either fails to rebut the government's evidence of probable cause, or cannot raise the innocent owner defense, summary judgment is appropriate, based solely upon the government's demonstration of probable cause. *United States v. All Right, Title & Interest in Real Property & Bldg. Known as 303 West 116th Street,* 901 F.2d 288, 291 (2d Cir.1990); *see also 6109 Grubb Road,* 886 F.2d at 623. Accordingly, Jaime Rivera's interest in all three of the properties is subject to forfeiture.

Section 881(a)(7) provides for an innocent owner defense by the following language:

> no property shall be forfeited ... to the extent of an interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.

21 U.S.C. § 881(a)(7). To successfully assert an innocent owner defense, the Claimants must establish (1) an ownership interest in the property and (2) that the illegal use of the property occurred either without their knowledge, or without their consent. *United States v. One 107.9 Acre Parcel of Land Located in Warren Township,* 898 F.2d 396, 398 (3d Cir.1990); *6109 Grubb Road,* 886 F.2d at 626. An ownership interest is broadly construed to include any recognizable legal or equitable interest. *United States v. A Parcel of Land, Bldgs., Appurtenances and Improvements, Known as 92 Buena Vista Ave.,* 937 F.2d 98, 102 (3d Cir.1991) (citing *6109 Grubb Road,* 886 F.2d at 625 n. 4).

Initially, however, to even contest a forfeiture action, the Claimants have the burden of demonstrating an interest in the seized property sufficient to satisfy the court of their standing. *United States v. Contents of Accounts Nos. 3034504504 and 144–07143 at Merrill, Lynch, Pierce, Fenner and Smith, Inc.,* 971 F.2d 974, 984–85 (3d Cir.1992) [hereinafter *Contents of Accounts* ]; *United States v. Real Property & Improvements Located at 5000 Palmetto Drive,* 928 F.2d 373, 375 (11th Cir.1991); *United States v. Premises*

*Known as 526 Liscum Drive*, 866 F.2d 213, 216 (6th Cir.1988) [hereinafter *Liscum Drive* ]. In a forfeiture action, any "colorable owner of the *res* or ... any colorable possessory interest in it" will satisfy the Article III standing [8] requirement. *Contents of Accounts*, 971 F.2d at 985 (citations omitted). Thus, the requirement of standing and ownership under 21 U.S.C. § 881(a)(7) essentially comes down to the same question—whether a claimant has shown the requisite interest in the property.[9] *United States v. One Parcel of Real Estate at 3229 S.W. 23rd Street*, 768 F.Supp. 340, 345 (S.D.Fla.1991).

With respect to the standing requirement, courts have uniformly rejected claims put forward by mere nominal or straw owners. *Contents of Accounts*, 971 F.2d at 985 (citation omitted). It is well established that the possession of bare legal title by one who does not exercise dominion or control over the property may be insufficient to establish standing to challenge a forfeiture. *Id.* at 985; *United States v. One Parcel of Land, Known as Lot 111–B, Tax Map Key 4–4–03–71(4)*, 902 F.2d 1443, 1444 (9th Cir.1990); *Liscum Drive*, 866 F.2d at 217; *United States v. A Single Family Residence and Real Property Located at 900 Rio Vista Blvd.*, 803 F.2d 625, 630 (11th Cir.1986) [hereinafter *900 Rio Vista Blvd.*]. The rationale for the rule is that people engaged in the drug trade often attempt to disguise their interests in property by placing legal title in someone else's name. *900 Rio Vista Blvd.*, 803 F.2d at 630 (citation omitted). The

Government must first establish a prima facie case that the Claimants are merely nominal or straw owners before they have the added burden of establishing dominion and control or some other indicia of true ownership beyond that of legal title. *See Contents of Accounts*, 971 F.2d at 986 (once government made out a prima facie case of straw ownership the burden shifted to the claimant to come forward with some evidence of dominion and control beyond the mere holding of legal title) (citing *Liscum Drive*, 866 F.2d at 217). We move now to discuss the application of the law, as set forth above, to each of the subject properties.

**A.  717 South Woodard & the Food Market Properties**

A tenancy by the entireties is a legal form of co-ownership recognized under Pennsylvania law. *See Clingerman v. Sadowski*, 513 Pa. 179, 183, 519 A.2d 378, 380–81 (1986). The Claimants, Jaime Rivera and Wyrma Acevedo Rivera, hold title to both the 717 South Woodard property and the Food Market property as tenants by the entireties. Therefore, Wyrma Rivera has established the requisite ownership interest in both of these properties under 21 U.S.C. § 881(a)(7) as well as satisfied the court of her standing to contest their forfeitures.[10]

Having demonstrated an ownership interest in the properties, Wyrma Rivera then had the burden of establishing that she was either unaware or did not

---

**8.** In a forfeiture action, to comply with the *statutory* standing requirement, the Supplemental Rules for Certain Admiralty and Maritime Claims, Rule C(6), requires a " 'claimant of property that is subject of an action in rem to file a claim.' " *United States v. Contents of Accounts Nos. 3034504504 and 144–07143 at Merrill, Lynch, Pierce, Fenner and Smith, Inc.*, 971 F.2d 974, 984 n. 7 (3d Cir.1992). The Claimants have filed verified claims for the properties and, therefore, have satisfied the only formality required for statutory standing.

**9.** Applicable state law is employed to define the nature of such property interests. *See, e.g., United States v. Parcel of Real Property Known as 1500 Lincoln Avenue*, 949 F.2d 73, 77 (3d

Cir.1991) (state law defined property interest where innocent owner held property with her husband as tenants by the entireties); *United States v. One Single Family Residence With Out Buildings Located at 15621 S.W. 209th Avenue*, 894 F.2d 1511, 1517 (11th Cir.1990) (In the absence of specific congressional action, Supreme Court pronouncements make clear that state law will govern property rights, even where federal statutes are involved.) (citations omitted).

**10.** Since the Government has not put forth any evidence of straw ownership, Wyrma Rivera need not establish dominion or control beyond that of holding bare legal title in order to satisfy the court of her standing to contest the forfeitures.

consent to her husband's drug activity on each of the properties in order to successfully assert an innocent owner defense. *6109 Grubb Road*, 886 F.2d at 626. Wyrma Rivera first asks us to infer that since the Government has not established one instance of involvement on her part in her husband's drug activities, she had no knowledge or did not consent to the activities. She alleges secondly that during the course of her husband's criminal conduct, she maintained the family residence at 717 South Woodard with the earnings that she received in the course of her employment. She alleges thirdly that from February through July of 1991, she operated and maintained a small grocery store, at the Food Market property, along with her husband. Presumably, from these allegations, Wyrma Rivera asks us to infer that because these properties were maintained by legitimate means, she had no reason to suspect her husband's illicit source of funds and, therefore, had no knowledge of or did not consent to her husband's drug activities on these properties. Wyrma Rivera has also made a bare assertion that she neither knew, nor consented to any of the criminal acts that were committed on the subject premises.

All of Wyrma Rivera's allegations are merely "colorable" or "not significantly probative", *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986), especially when considered in the context of the whole record. From May through July of 1991, the 717 South Woodard property, the residence of Jaime and Wyrma Rivera, was used to store cocaine on numerous occasions. Additionally, on July 31, 1991, three kilograms of cocaine were seized from the table of the kitchen/dining room at the 717 South Woodard property. Drug paraphernalia, including an Ohaus triple beam scale, sandwich bags, and zip lock bags were also seized inside their residence. In regard to the Food Market property, from May

through July of 1991, it was also used on numerous occasions to store cocaine. Further, the Food Market property was the site of both person-to-person meetings and telephone calls between Jaime Rivera and DEA agents to arrange at least three separate sales of cocaine. During this same time period, Wyrma Rivera was operating a small grocery store at the Food Market property, along with her husband.

We must conclude that Wyrma Rivera's bare denial coupled with whatever tenuous inferences can be drawn from her allegations, would not lead a rational trier of fact to find on the record as a whole that there is a genuine issue of her lack of knowledge or consent for trial. See *United States v. One 107.9 Acre Parcel of Land Located in Warren Township*, 898 F.2d 396, 398–99 (3d Cir.1990) (self-serving, uncorroborated assertion that claimant pleaded with her husband to stop growing marijuana and threatened to leave him was insufficient to create a factual dispute on the issue of nonconsent, when considered in light of her involvement in the marijuana operation that was taking place on the property); *United States v. One Parcel of Property Located at 15 Black Ledge Drive*, 897 F.2d 97, 102 (2d Cir.1990) (a bare denial of no knowledge was insufficient to create a triable issue of fact when drugs and drug paraphernalia were seized from common areas); *United States v. One Parcel of Property Located at 138 Colton St.*, 789 F.Supp. 74, 77–78 (D.Conn.1991) (allegations of no involvement, no knowledge, and never knowingly witnessing any violations were not enough to create a triable issue of fact in light of seizure of gambling-related paraphernalia from common areas of the house). Accordingly, Wyrma Rivera's claims are denied and her interest in both the 717 South Woodard property and the Food Market property are properly subject to forfeiture under 21 U.S.C. § 881(a)(7).[11]

---

11. We have already decided that Jaime Rivera's interest in the subject properties was subject to forfeiture. Thus, since the entire interest in each of the properties is subject to forfeiture, the restrictions associated with forfeiting only one spouse's interest in property held as tenants by the entireties are not applicable. See *United States v. Parcel of Real Property Known as 1500 Lincoln Avenue*, 949 F.2d 73, 76–78 (3d Cir. 1991).

## B. *The Liederkranz Property*

▮ The Government contends that the Claimants, Wyrma Rivera and Luis Rivera, lack standing to contest the forfeiture of the property, located at 209–211 and 213–217 North Second Street, the site of the Liederkranz. On February 7, 1991, Jaime Rivera purchased the Liederkranz property. He is the sole record owner of the property and we have already decided that his interest is subject to forfeiture. Wyrma Rivera asserts an ownership interest in the Liederkranz property solely by virtue of her marriage to Jaime Rivera at the time of its purchase. The property provisions of the Pennsylvania Divorce Code, 23 Pa. Cons.Stat.Ann. §§ 3501–3508 (1991), which pertain to the assignment of property interests between husband and wife during divorce proceedings, control our decision in determining the applicability of such an interest in a civil forfeiture action.

The Pennsylvania Superior Court has held that the definition of marital property under the Divorce Code was not applicable to determine ownership of a vehicle for purposes of the Pennsylvania Motor Vehicle Financial Responsibility Law. *Ibarra v. Prudential Property & Casualty Ins. Co.*, 402 Pa.Super. 27, 32, 585 A.2d 1119, 1122 (1991). The court has also stated that the Divorce Code may not be applicable to other areas of the law. *Id.* (citing *Haviland v. Haviland*, 333 Pa.Super. 162, 164–65, 481 A.2d 1355, 1357 (1984)). In *Haviland*, the Pennsylvania Superior Court refused to extend the property provisions of the Divorce Code to upset the established rules of probate and intestate succession. *Haviland*, 333 Pa.Super. at 164–65, 481 A.2d at 1357.[12]

We can find no persuasive support that the Pennsylvania Supreme Court would directly apply the Divorce Code definition of marital property to determine an ownership interest for purposes of a civil forfeiture action. *Cf. United States v. One Parcel of Real Property with Bldgs., Appurtenances and Improvements Known as 116 Emerson St.*, 942 F.2d 74, 79 n. 3 (1st Cir.1991) [hereinafter *116 Emerson Street*] (marital equitable interest under Rhode Island divorce law was an improper basis for standing in civil forfeiture action). Accordingly, Wyrma Rivera has failed to demonstrate a sufficient interest in the Liederkranz property to satisfy us of her standing to contest the forfeiture under 21 U.S.C. § 881(a)(7) and, therefore, her claim must be denied.

▮ Luis Rivera claims to be an equitable owner of the Liederkranz property, presumably under the theory of a resulting trust. Under Pennsylvania law, "the payment of the purchase price by the beneficiary and its use by the transferee in acquiring the land makes out a prima facie case for a purchase-money resulting trust in favor of the payor...." *Lewis v. Spitler*, 266 Pa.Super. 201, 206–07, 403 A.2d 994, 996 (1979) (citing *Masgai v. Masgai*, 460 Pa. 453, 458, 333 A.2d 861, 863 (1975); *Zahorsky v. Leschinsky*, 394 Pa. 368, 372, 147 A.2d 362, 365 (1959)). However, a prima facie case may be rebutted by a showing that the payor did not intend to receive any beneficial interest in the land. *Id.* In the absence of an agreement to divide the property in some other manner, a beneficiary is entitled to a resulting trust in such proportion as his contribution bore to the total purchase price of the land. *Lewis*, 266 Pa.Super. at 207–08, 403 A.2d at 997 (citations omitted). A resulting trust must be established by evidence that is "clear, direct, precise, and convincing." *Masgai*, 460 Pa. at 460, 333 A.2d at 865.

▮ In order to purchase the Liederkranz property, Luis Rivera contends that he contributed $14,500.00 to the down payment and, thereafter, made monthly payments of $792.00 to the mortgage holder on an alternating basis with Jaime Rivera. It is further contended that there was an agreement between Luis Rivera and Jaime

---

**12.** Although both of these decisions interpreted the property provisions of the Divorce code before its revision in 1990, the same language limiting the definition of marital property to matters of equitable distribution that the court found determinative in *Ibarra*, 402 Pa.Super. at 31–32, 585 A.2d at 1121–1122, is also found in the revised Divorce Code. *Compare* 23 Pa.S.A. §§ 401–04 *with* 23 Pa.Cons.Stat.Ann. §§ 3501–3506 (1991). Therefore, the Divorce Code revisions had an insignificant impact on the two Pennsylvania Superior Court holdings.

Rivera, that title to the property would be taken solely in Jaime Rivera's name.[13] Accordingly, for purposes of this Motion, we will find that Luis Rivera has made out a prima facie claim for a purchase-money resulting trust in the proportion his $14,-500.00 contribution bore to the total purchase price of the Liederkranz property.[14] See *Lewis*, 266 Pa.Super. at 207, 403 A.2d at 997; *Barrish v. Flitter*, 715 F.Supp. 692, 695 (E.D.Pa.1989); *cf. 116 Emerson St.*, 942 F.2d at 79–80. Consequently, Luis Rivera has for this Motion established the requisite ownership interest in the Liederkranz property under 21 U.S.C. § 881(a)(7) as well as satisfied the court of his standing to contest its forfeiture.

▆▆▆ The Government contends that Luis Rivera is a straw owner and, therefore, lacks standing to contest the forfeiture. This argument is without merit. First, this rule is applied to deny standing to a person in possession of actual legal title, who does not exercise dominion and control over the property. *See, e.g., Contents of Accounts*, 971 F.2d 974, 985–86 (3d Cir.1992). As we stated earlier, the rationale for the rule is that people engaged in the drug trade often attempt to disguise their interests in property by placing legal title in someone else's name. *900 Rio Vista Blvd.*, 803 F.2d 625, 630 (11th Cir.1986) (citation omitted). It has no application with respect to an equitable ownership interest in the form of a purchase-money resulting trust, where the beneficiary contributes to the purchase price of the property. Second, even assuming *arguendo* the rule's applicability, the Government must first establish a prima facie case that a claimant is merely a nominal or straw owner before a claimant has the added burden to show dominion or control in order to establish standing. *See Contents of Accounts*, 971 F.2d at 986 (citation omitted). In the instant case, the Government

has put forth no evidence of such straw ownership on the part of Luis Rivera.

▆▆▆ Upon demonstrating an ownership interest, Luis Rivera then had the burden of establishing that he was either unaware or did not consent to Jaime Rivera's drug activities on the Liederkranz property to successfully assert an innocent owner defense. Luis Rivera has made only a bare assertion to the effect that he neither knew, nor consented to any of the criminal acts that were committed on the Liederkranz property. In addition, he asks us to infer that since the Government has not established one instance of involvement on his part in Jaime Rivera's drug activities, he had no knowledge or did not consent to the activities. The burden is not on the Government to establish knowledge or consent, but rather on the claimant to demonstrate a lack thereof. In addition, as we stated earlier, such a bare allegation is merely colorable or not significantly probative of lack of knowledge or consent. Such allegations are no more probative than a bare assertion that Luis Rivera was not involved in the drug activities. However, unlike the situation with Wyrma Rivera, the Government has put forth no facts from which we may reasonably infer at this point that Luis Rivera had knowledge or consented to Jaime Rivera's drug activities on the Liederkranz property. Thus, we are left to decide whether Luis Rivera's bare denial of knowledge and involvement, in the absence of any other facts in the record from which a reasonable inference of his knowledge or consent could be drawn, is sufficient to create a triable issue of fact as to his lack of knowledge or consent.

Although the Third Circuit has not dealt with this issue directly, it has consistently ruled that a party resisting a summary judgment motion "cannot ... rely merely upon bare assertions, conclusory allega-

---

**13.** Jaime Rivera has corroborated Luis Rivera's claim of an ownership interest in the Liederkranz property in his Answers to the Government's Interrogatories.

**14.** Under Pennsylvania law, a resulting trust in property must arise, if at all, at the inception of title. *See Lewis*, 266 Pa.Super. at 208, 403 A.2d

at 997–98 (citing *Musselman v. Myers*, 240 Pa. 5, 7, 87 A. 425, 426 (1913)). Since Luis Rivera's contributions towards the mortgage payments all occurred after Jaime Rivera took title to the Liederkranz property, such payments can not increase the size of his purchase-money resulting trust in the property.

tions or suspicions." *See, e.g., Ness v. Marshall,* 660 F.2d 517, 519 (3d Cir.1981); Fed.R.Civ.P. 56(e). A " 'response must set forth *specific facts* showing that there is a genuine issue for trial.' " *Gans v. Mundy,* 762 F.2d 338, 341 (3d Cir.1985) (quoting Fed.R.Civ.P. 56(e)) (emphasis added), *cert. denied,* 474 U.S. 1010, 106 S.Ct. 537, 88 L.Ed.2d 467 (1985). More specifically, in the context of a forfeiture action, the Third Circuit, relying on a U.S. Supreme Court decision, ruled that a claimant must come forward with specific facts to raise a genuine issue for trial as to lack of knowledge or consent. *See United States v. One 107.9 Acre Parcel of Land Located in Warren Township,* 898 F.2d 396, 398 (3d Cir.1990) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986)).

The Second Circuit has stated that under some circumstances a claimant's flat denial of knowledge, without more, could suffice to create a genuine issue of material fact. *United States v. One Parcel of Property Located at 15 Black Ledge Drive,* 897 F.2d 97, 102 (2d Cir.1990) [hereinafter *15 Black Ledge Drive* ]. Presumably, one such circumstance would be a bare denial of knowledge in the absence of any facts from which a reasonable inference could be drawn that the claimants had actual knowledge of the drug-related activity taking place on their property. See *United States v. 8848 South Commercial St.,* 757 F.Supp. 871, 884–86 (N.D.Ill.1990) (reaching exactly this result). But, we decline to follow the Second Circuit's lead. The court's statement was based on the caution that should be exercised in granting summary judgment when state of mind is at issue. *15 Black Ledge Drive,* 897 F.2d at 102–103. Indeed, the Third Circuit has also stated that a court should be reluctant to grant summary judgment when resolution of the dispositive issue requires a determination of state of mind. *Metzger By and Through Metzger v. Osbeck,* 841 F.2d 518, 521 (3d Cir.1988). The rationale is that such issues depend upon the credibility of witnesses testifying as to their own states of mind, and assessing credibility is best left to the fact finder. *Id.* (citations omitted). When faced squarely with this same issue, however, the U.S. Supreme Court explained that although courts must be sensitive to the difficulty of summary dispositions in cases in which state of mind is at issue, this does not relieve a party opposing summary judgment of the obligation under Fed.R.Civ.P. 56(e) of coming forward with some facts or probative evidence. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256–57, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986); 10A Wright, Miller & Kane, Federal Practice and Procedure § 2730 (2d ed. Supp.1992).

We have already given an extension and more than ample time for the filing of a response. We conclude that Luis Rivera's bare denial of knowledge and involvement, even in the absence of any other facts in the record from which a reasonable inference of his knowledge or consent could be drawn, is insufficient to create a triable issue of fact as to his lack of knowledge or consent. Accordingly, Luis Rivera's interest in the Liederkranz property is subject to forfeiture under 21 U.S.C. § 881(a)(7) along with the interests of the other Claimants.

An appropriate order follows.

### JUDGMENT AND DECREE OF FORFEITURE

And Now this 5th day of October, 1992, upon consideration of the pleadings and the matters presented by both the Plaintiff and the Claimants in connection with the Motion for Summary Judgment in this matter and the findings and opinion of the Court it is hereby ORDERED, ADJUDGED AND DECREED that:

1. The Court's Order of July 16, 1992 granting reconsideration is RESCINDED, and the Court's prior Order of June 30, 1992 stands as set forth below.

2. Plaintiff's Motion for Summary Judgment, filed on April 29, 1992, is GRANTED and judgment is entered in favor of the Plaintiff. This case is closed.

3. Plaintiff's request for forfeiture is granted.

4. The defendant real property, 717 South Woodard Street, Allentown, Pennsylvania and all improvements thereon and appurtenances thereto described as follows:

BEGINNING a point on the property line on the north side of South Woodard Street and on the west side of West Saucon Street; thence in a northwesterly direction along the north side of South Woodard Street a distance of two hundred and fifty-three and three hundredths feet (253.03′) to a point, said point being the southwest corner of new Lot # 719; thence along the north side of South Woodard Street in a northwesterly direction a distance of twenty-five (25′) feet to a point on the north side of South Woodard Street; thence in a northeasterly direction along Lot # 715 a distance of one hundred twenty feet (120′) to a point on the south side of Gore Street; thence in a southeasterly direction along the south side of Gore Street a distance of twenty-five feet (25′) to a point; thence in a southwesterly direction along new Lot # 719 a distance of one hundred and twenty feet (120′) to the place of beginning.

and being the same property listed and more fully described at Deed Book Volume 1271, page 373 in the Office of the Recorder of Deeds for Lehigh County Pennsylvania; is forfeited to the United States of America pursuant to 21 U.S.C. § 881(a)(7).

5. All right, title, and ownership of Jaime Rivera and Wyrma Acevedo Rivera and their heirs and assigns in defendant 717 South Woodard Street, Allentown, Pennsylvania and all right, title, and interest of all other persons is hereby extinguished and all, right, title, and ownership to said defendant is vested in the United States of America pursuant to 21 U.S.C. § 881(a)(7).

6. The defendant real property, 245 and 247 North Second Street, Allentown, Pennsylvania and all improvements thereon and appurtenances thereto described as follows:

ALL THAT CERTAIN messuage, tenement and lot or piece of ground situate at the Southeast corner of Second and Chew Streets, in the First Ward of the City of Allentown, County of Lehigh and State of Pennsylvania, containing in front on said Second Street thirty (30) feet six (6) inches and extending eastwardly along said Chew Street in depth of equal width on hundred (100) feet to a ten (10) foot wide private alley; being known as Nos. 245 and 247 North Second Street.

and being the same property listed and more fully described at Deed Book Volume 1376, page 251 in the Office of the Recorder of Deeds for Lehigh County Pennsylvania; is forfeited to the United States of America pursuant to 21 U.S.C. § 881(a)(7).

7. All right, title, and ownership of Jaime Rivera and Wyrma Acevedo Rivera and their heirs and assigns in defendant 245 and 247 North Second Street, Allentown, Pennsylvania and all right, title, and interest of all other persons is hereby extinguished and all, right, title, and ownership to said defendant is vested in the United States of America pursuant to 21 U.S.C. § 881(a)(7).

8. The defendant real property, 209–217 North Second Street, Allentown, Pennsylvania and all improvements thereon and appurtenances thereto described as follows:

ALL THAT CERTAIN tract of land and the improvements thereon, located on the east side of N. Second Street between W. Turner and W. Oak Streets, in the First Ward of the City of Allentown, Lehigh County, Commonwealth of Pennsylvania, known as 209–211 N. Second Street, being bounded and described as follows, to wit:

BEGINNING at a point on the easterly property line of N. Second Street, 90.56 feet north of the northerly property line of W. Turner Street, Thence, along the easterly property line of N. Second Street, N 13 degrees 47′ 00″ W, 40.00 feet to a point, Thence, along the southerly property line of 213–217 N. Second Street, N 76 degrees 13′ 00″ E, 170.00 feet to a point, Thence, along the westerly property line of N. Spruce Street (an alley 10 feet wide), S 13 degrees 47′ 00″ E, 40.00 feet to a point, Thence, along the northerly property line of 207 N.

Second Street, S 76 degrees 13′ 00″ W, 170.00 feet to the place of beginning. CONTAINING 6,800 Square Feet.

ALL THAT CERTAIN tract of land and the improvements thereon, located on the east side of North Second Street between W. Turner and W. Oak Streets, in the First Ward of the City of Allentown, Lehigh County, Commonwealth of Pennsylvania, known as 213–217 North Second Street, being bounded and described as follows, to wit:

BEGINNING at a point on the easterly property line of N. Second Street, 130.56 feet north of the northerly property line of W. Turner Street, Thence, along the easterly property line N. Second Street, N 13 degrees 47′ 00″ W, 60.00 feet to a point, Thence, along the southerly property line of 219 N. Second Street and 170–188 (inclusive) W. Oak Street, N 76 degrees 13′ 00″ E, 170.00 feet to a point, Thence, along the westerly property line of N. Spruce Street (an alley 10 feet wide), S 13 degrees 47′ 00″ E, 60.00 feet to a point, Thence, along the northerly property line of 209–211 N. Second Street, S 76 degrees 13′ 00″ W, 170.00 feet to the place of beginning. CONTAINING 10,200 Square Feet.

and being the same property listed and more fully described at Deed Volume 1466, pages 315–316 in the Office of the Recorder of Deeds for Lehigh County Pennsylvania; is forfeited to the United States of America pursuant to 21 U.S.C. § 881(a)(7).

9. All right, title, and ownership of Jaime Rivera and his heirs and assigns in defendant 209–217 North Second Street, Allentown, Pennsylvania and all right, title, and interest of all other persons is hereby extinguished and all, right, title, and ownership to said defendant is vested in the United States of America pursuant to 21 U.S.C. § 881(a)(7).

10. The United States Marshal's Service shall dispose of the defendants according to law and consistent with each of the Stipulations of Settlement reached between the United States and Merchant's Bank, Meridian Bank, the Federal Home Loan Mortgage Corporation, and George Sam,

previously approved by the Court in this action.